ARNOLD & PORTER LLP
Michael A. Berta (SBN 194650)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Phone: (415) 471-3100
Fax: (415) 471-3400
michael.berta@aporter.com

Nicholas H. Lee (SBN 259588)
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
Phone: (213) 243-4000
Fax: (213) 243-4199
nicholas.lee@aporter.com

Sara P. Zogg (admitted *pro hac vice*)
555 Twelfth Street, NW
Washington, DC 20004
Phone: (202) 942-5000
Fax: (202) 942-5999
sara.zogg@aporter.com

Attorneys for Defendants
Google Inc. and YouTube, LLC

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC. and YOUTUBE, LLC, <br><br> Defendants. | Case No. 5:13-cv-01317-EJD <br><br> **DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS BASED ON PERSONALWEB'S SPOLIATION OF EVIDENCE** <br><br> Hearing Date:  February 7, 2014 <br> Hearing Time:  9:00 a.m. <br> Courtroom:  Courtroom 4, 5th Floor, San Jose <br> Judge:  Hon. Edward J. Davila |

### REDACTED - PUBLIC VERSION

# TABLE OF CONTENTS

I.   STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

II.  PRELIMINARY STATEMENT ............................................................................ 1

III. FACTUAL BACKGROUND ................................................................................. 3

    A.   PersonalWeb Acquired The Patents-In-Suit In Order To Pursue Litigation ............... 3

    B.   PersonalWeb Instructed Employees To Destroy Documents In Anticipation Of Litigation, Which Documents Are Not Recoverable ................................. 5

    C.   PersonalWeb Destroyed Relevant Evidence ................................................ 7

IV.  ARGUMENT ...................................................................................................... 9

    A.   Courts Have Inherent Authority To Tailor Spoliation Sanctions To Remedy Case-Specific Conduct ................................................. 9

        1.   Legal Standard ............................................................................. 9

        2.   PersonalWeb Purposefully Violated Its Duty To Preserve Evidence ........... 10

        3.   Google Has Suffered And Will Continue To Suffer Irreparable Prejudice .................................................................. 13

        4.   PersonalWeb's Spoliation Justifies Dismissal Of This Action ..................... 15

        5.   Alternate Sanctions In The Event Dismissal Is Not Granted ........................ 17

            a.   Adverse Inference ................................................................ 18

            b.   Issue Preclusion And Evidentiary Sanctions ........................ 19

        6.   PersonalWeb's Spoliation Warrants Monetary Sanctions, Including Cost-Shifting Of Google's Discovery Expenses To PersonalWeb ............... 20

    B.   Pursuant To The Crime-Fraud Exception, PersonalWeb Cannot Shield Attorney-Client Communications Or Work Product From Discovery ..................... 21

V.   CONCLUSION .................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*AdvantaCare Health Partners, LP v. Access IV*,
No. C-03-04496, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) ...........................................20

*Ahcom, Ltd. v. Smeding*,
No. 07-1139 SC, 2011 WL 3443499 (N.D. Cal. Aug. 8, 2011)......................................10, 20

*Allstate Ins. Co. v. Sunbeam Corp.*,
865 F. Supp. 1267 (N.D. Ill. 1994) ...................................................................................17

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
881 F. Supp. 2d 1132 (N.D. Cal. 2012) ......................................................................passim

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
No. 06-4170, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) ...................................18, 19, 20

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
No. C 03-5340, 2007 WL 1848665 (N.D. Cal. Jun. 27, 2007) ...........................................19

*Herson v. City of Richmond*,
No. C 09-02516 PJH (LB), 2011 WL 3516162 (N.D. Cal. Aug. 11, 2011 ) ..................13, 20

*Hynix Semiconductor Inc. v. Rambus Inc.*,
645 F.3d 1336 (Fed. Cir. 2011)........................................................................................23

*Hynix Semiconductor Inc. v. Rambus Inc.*,
897 F. Supp. 2d 939 (N.D. Cal. 2012) ........................................................................passim

*In re Grand Jury Proceedings*,
87 F.3d 377 (9th Cir. 1996)...............................................................................................22

*In re Napster*,
462 F.Supp.2d 1060 (N.D. Cal. 2006) .............................................................................19

*In re Sealed Case*,
754 F.2d 395 (D.C. Cir. 1985) .........................................................................................23

*Keithley v. Homestore.com, Inc.*,
No. C-03-04447, 2008 WL 3833384 (N.D. Cal. Aug. 12, 2008) ........................................19

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006)......................................................................................passim

*Micron Tech., Inc. v. Rambus Inc.*,
645 F.3d 1311 (Fed. Cir. 2011)........................................................................9, 10, 22, 23

*Micron Tech., Inc. v. Rambus Inc.*,
    917 F. Supp. 2d 300 (D. Del. 2013) ................................................................... 16

*S.E.C. v. Mercury Interactive LLC*,
    No. 3:07-cv-02822, 2012 WL 3277165 (N.D. Cal. 2012) ................................ 18, 19

*SK Hynix v. Rambus, Inc.*,
    No. C-00-20905, 2013 WL 1915865 (N.D. Cal. May 8, 2013) ................................ 12, 14, 18

*State Farm Fire & Cas. Co. v. Broan Mfg. Co., Inc.*,
    523 F. Supp. 2d 992 (D. Ariz. 2007) ........................................................... 16, 17

*U.S. v. Zolin*,
    491 U.S. 554 (1989) ..................................................................................... 22

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992) ......................................................................... 20

*Wachtel v. Guardian Life Ins. Co.*,
    239 F.R.D. 376 (D.N.J. 2006) ......................................................................... 23

**Statutes**

Cal. Penal Code § 135 ........................................................................................ 23

**Rules**

Fed. R. Civ. P. 26(b) .......................................................................................... 13

Pursuant to this Court's inherent authority to award sanctions, Defendants Google Inc. and YouTube, LLC (collectively, "Google") respectfully submit this opening brief in support of their motion for sanctions, up to and including dismissal of this action, based upon Plaintiff PersonalWeb Technologies, LLC's ("PersonalWeb") spoliation of evidence.

## I.  STATEMENT OF ISSUES TO BE DECIDED

*First*, the appropriate sanction for PersonalWeb's intentional destruction of relevant evidence prior to its filing of this lawsuit.

*Second*, whether the crime-fraud exception pierces any claimed attorney-client privilege or work product immunity with respect to communications between PersonalWeb and its counsel, and materials prepared by or on behalf of PersonalWeb in anticipation of this litigation.

## II.  PRELIMINARY STATEMENT

In the months leading up to its December 2011 filing of this action, PersonalWeb instructed its employees to delete their emails in preparation for its upcoming litigation against Google and others.  And, just to make sure, PersonalWeb told its employees REDACTED PersonalWeb's destruction of evidence is not in question.  Nor is the motivation for the destruction.  PersonalWeb sent out destruction notices as part of its preparation for litigation.

PersonalWeb has attempted to assert that its destruction notices and its later-filed litigations were coincidental – the destruction notices were supposedly to remind employees of an allegedly preexisting document "retention" policy.  And, if not for the honesty of a PersonalWeb employee of the time, Google may never have discovered what was going on.  This (now former) employee – Jake Drew – testified that PersonalWeb's actions had nothing to do with a "retention" policy.  In fact, PersonalWeb's employees were repeatedly told by Michael Weiss, PersonalWeb's CEO and President, to delete their emails <u>because of</u> the upcoming litigations.  Among other things, Mr. Weiss stated REDACTED Another (still current) PersonalWeb employee, who was deposed under the watchful eye of Mr. Weiss, tried his best to discredit Jake Drew, but ultimately only confirmed that REDACTED

[REDACTED]

[REDACTED]

The only unresolved question regarding PersonalWeb's destruction is the exact contents of the destroyed information. Discovery has offered some insights into PersonalWeb's activities at the time. For example, PersonalWeb was busy [REDACTED]

[REDACTED] Because of the destruction orders, there are few, if any, documents regarding these ongoing activities.

Google understands that these are very serious allegations, and it does not make them lightly. Google has sought to ascertain the extent of destruction through discovery. Google requested from PersonalWeb metrics to show typical email usage volume, the number of emails destroyed, the senders and recipients of those emails, and the dates of deletion. PersonalWeb provided nothing. Google also requested that PersonalWeb produce native copies of relevant employees' email accounts, to determine if it might ascertain for itself how many emails had been destroyed and whether any were recoverable. PersonalWeb refused and provided nothing. In addition, in order to ascertain the extent, if any, of the involvement of counsel in the destruction, Google sought discovery into PersonalWeb's correspondence with counsel regarding its document "retention" and destruction. PersonalWeb asserted privilege and again provided nothing.

Because PersonalWeb intentionally destroyed relevant emails and communications in anticipation of litigation with Google and others, PersonalWeb's actions warrant sanctions and also piercing of the attorney-client and work product privileges. For the reasons set forth herein, Google requests that the Court sanction this misconduct.

## III.   FACTUAL BACKGROUND

### A.   PersonalWeb Acquired The Patents-In-Suit In Order To Pursue Litigation

PersonalWeb filed this action on December 8, 2011, alleging that three Google systems infringed eight patents:[1] U.S. Patents Nos. 5,978,791, 6,415,280, 6,928,442, 7,802,310, 7,945,539, 7,945,544, 7,949,662, and 8,001,096 (collectively, the "patents-in-suit").  (*See* Dkt. # 1, Complaint ¶ 2.)  Each patent-in-suit – which are referred to collectively by their owners as the "True Names" patents – purports to be a continuation or divisional of a patent application that was filed in April 1995.  (*See, e.g.,* Dkt. # 159 at 1, PersonalWeb Br. (referring to patents as "True Names"); *see also* Dkt. # 1-10, '791 patent at [63].)  The earliest of the patents-in-suit, the '791 patent, issued on November 2, 1999.  (*Id.* at [45].)  The latest of the patents-in-suit issued on August 16, 2011 (the '096 patent).  (*See* Dkt. # 1-17, '096 patent at [45].)

Prior to this litigation, a 50% undivided interest in the patents-in-suit was owned by Brilliant Digital Entertainment ("BDE"), through its subsidiary Kinetech (the assignee of the April 1995 patent application and all continuations, divisions, etc.).[2]  (Dkt. # 20-2 [Assignment]; Dkt. # 23, Ex. 22 ¶ 2 [Bermeister Decl.]; Dkt. # 23, Ex. 19 [Apr. 16, 2007 press release].)  BDE had a lengthy history of litigating and attempting to license the True Names patents.  (*See id.*)  Following the May 2011 issuance of three more patents from the same 1995 application, BDE announced that it "continue[d] to actively pursue licensing and participation in the operation of businesses that use our patents for content addressable storage, cloud computing, search, social networking and other important developing technologies in the rapidly growing distributed computing category."  (Dkt. # 23, Ex. 28 [Jul. 6, 2011 press release].)  One of the target companies from which it intended to "demand license fees" was Google; another was Apple (a defendant in one of the 2012 True Names

---

[1] That same day, PersonalWeb filed six other actions involving the same patents-in-suit, and in September 2012, filed an additional seven lawsuits.  (Lee Decl. ¶¶ 2, 3.)

[2] Kinetech was established to manage patents on behalf of David Farber and Ronald Lachman, the named inventors of the True Names patents.  (Lee Decl., Ex. 18 [Jul. 6, 2011 itNews]; *see also, e.g.*, Dkt. # 1-10, '791 patent at [75].)  The other 50% undivided interest currently is held by Plaintiff Level 3 Communications, but all infringement claims in this case have been brought solely on behalf of PersonalWeb.  (Dkt. # 38, Am. Complaint ¶¶ 1, 3.)

1  cases).  (Lee Decl., Ex. 19 [BDE "in the news" webpage, with link to Lee Decl., Ex. 18] ("Aussie

2  eyes Apple, Google …"); *see also id.*, Ex. 18 [Jul. 6, 2011 itNews].)

3        BDE, in conjunction with PersonalWeb, has executed its litigation and licensing strategy

4  against Google and other companies.  In July 2011, BDE orchestrated transfer of the patents-in-suit

5  from its subsidiary Kinetech to PersonalWeb.[3]  (Dkt. # 40-2, Weiss Decl. ¶ 12.)  In September 2011

6  (one month after the last of the patents-in-suit issued), BDE announced that Kinetech had

7  transferred ownership of the True Names patents to PersonalWeb as part of an "asset contribution

8  that provided BDE with majority ownership of PersonalWeb."  (Dkt. # 20-17 [Sept. 28, 2011 press

9  release].)  BDE's CEO confirmed that BDE would be "working with PersonalWeb to pursue [ ]

10  licensing and participation in businesses that use our patents for content addressable storage, cloud

11  computing, search, social networking and other important developing technologies in the rapidly

12  growing distributed computing category."  (*Id.*)

13        The same September 2011 press release that announced the patents' transfer and

14  PersonalWeb's "licensing" strategy also specifically identified Google, Microsoft, EMC, IBM, HP

15  and Caringo as having patents or patent applications that demonstrated "the [purported] significance

16  of the Truenames portfolio."  (*Id.*)  Every one of these companies has been sued by PersonalWeb.

17  (Lee Decl. ¶¶ 2, 3; *see also* Lee Decl., Ex. 20 [Sept. 10, 2013 BDE website] (BDE holds an

18  investment interest in PersonalWeb, which is "actively involved in discovering technologies and

19  licensing its patents …").)                       REDACTED

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

_____

25  [3] PersonalWeb's Non-Executive Chairman, Kevin Bermeister, is also the CEO and Director of
BDE, and the CEO and CFO of BDE subsidiaries Kinetech and Altnet.  (Dkt. # 41-10, Bermeister
26  Decl. ¶¶ 2, 5.)  Anthony Neumann works alongside Mr. Bermeister Kinetech, as Vice President of
Business Development at BDE and as Corporate Secretary at BDE subsidiaries Kinetech and
27  Altnet.  (*Id.* ¶¶ 3-5; Dkt. # 41-11, Neumann Decl. ¶¶ 2, 4-5.)  Kinetech and Altnet have just the two
officers, and no employees.  (*Id.* ¶¶ 4-5.)

28

1

REDACTED

2

3

**B.      PersonalWeb Instructed Employees To Destroy Documents In Anticipation Of Litigation, Which Documents Are Not Recoverable**

By no later than May or June 2011, several months <u>before</u> it had acquired the patents-in-suit from Kinetech through the asset contribution, PersonalWeb confirmed that it planned to initiate litigation.  Jake Drew, a software developer and analyst employed by PersonalWeb from January 2011 to April 2012, testified that REDACTED

(Lee Decl., Ex. 1 [Drew Tr.] at 15:4-9, 26:6-20, 107:7-9.)  Joshua Jarvis, another PersonalWeb employee, testified that REDACTED

(*See* Lee Decl., Ex. 2 [Jarvis Tr.] at 156:16-157:15; Dkt. # 20-17 [Sept. 28, 2011 press release].)

Despite PersonalWeb's clear plan to pursue litigation, it took no steps to preserve documents.  (Lee Decl., Ex. 1 [Drew Tr.] at 33:15-25; Lee Decl., Ex. 2 [Jarvis Tr.] at 183:19-22.)  Instead, it implemented a strategy to intentionally <u>destroy</u> discoverable information, REDACTED

REDACTED

1   (Lee Decl., Ex. 1 [Drew Tr.] at 28:7-24 (emphasis added).)  As Mr. Drew testified, REDACTED



2

3

4

5

6

7   (*See id.* at 28:25-30:5; *see also* 30:11-16 REDACTED

8

9

10   (*Id.*

11   at 33:21-34:4; *see also id.* at 34:5-20 ( REDACTED

12

13

14   (*Id.* at 31:14-25, 32:1-12, 33:10-14, 33:21-25, 34:21-
23, 35:23-5; *see also* Part III.A, *supra*.) REDACTED

15

16

17   (*Id.* at 36:10-17; *see also id.* at 36:17-20 REDACTED

18

19

20

21   (*Id.* at 32:1-7; *see also id.*, Ex. 2 [Jarvis Tr.] at 175:14-176:12, 177:17-20 REDACTED

22

23

24

25   (Lee Decl., Ex. 3 [Jarvis Ex. 10]; *id.*, Ex. 2 [Jarvis Tr.] at 174:17-24, 175:3-13; *see also id.* at

26   175:14-176:12, 177:17-20 REDACTED

27

28

1    [REDACTED]

2    [REDACTED] (*Id.*, Ex. 1 [Drew Tr.] at 32:8-18.)

3       After destroying potential evidence as described in Part III.C below, and <u>after</u> it filed the

4    first of the True Names lawsuits, PersonalWeb [REDACTED]

5    [REDACTED] (*Id.* at 46:6-9, 49:6-50:9; Lee Decl., Ex. 4 at PWEB

6    052700-706 [Jarvis Ex. 11].)  But, the damage had been done already.  PersonalWeb has admitted

7    that it does not maintain backups of its email.[4]  (*Id.*, Ex. 5 [Oct. 26, 2012 email from A.

8    McMillian].)  The destroyed evidence is unrecoverable.

9      **C.**      **PersonalWeb Destroyed Relevant Evidence**

10       By the time PersonalWeb filed its lawsuits in December 2011, it had systematically

11    destroyed potentially thousands of documents and correspondence concerning Google, the patented

12    technology at issue in this and other lawsuits, and the development of PersonalWeb's own product

13    that it contends is covered by the patents-in-suit.  While it is not possible to know the volume of

14    deleted evidence, as described below, it is certain that PersonalWeb deleted documents and

15    correspondence that bear on issues in this litigation.

16       Two days before it filed this and other lawsuits in the Eastern District of Texas,

17    PersonalWeb issued a press release on December 6, 2011 claiming to have launched its StudyPods

18    product.  (Lee Decl., Ex. 6 [Dec. 6, 2011 press release].)  PersonalWeb now contends that

19    StudyPods (which is based upon technology developed by an Israeli company, Topodia) embodies

20    certain claims of the patents-in-suit, and [REDACTED]

21    [REDACTED]

22    [REDACTED] (*Id.*, Ex. 7 at 5 [Jan. 22, 2013 Infringement

23    Contentions]; *id.*, Ex. 1 [Drew Tr.] at 42:13-44:13.)  As Mr. Weiss explained to Mr. Drew on more

24    than one occasion, [REDACTED]

---

[4] In response to Google's inquiry in October 2012, PersonalWeb's counsel agreed to ascertain whether <u>any</u> backup storage existed for email.  (Lee Decl., Ex. 8 [Oct. 24, 2012 letter from N. Nowak].)  They could not say with certainty – and appear to have made no effort to ascertain – whether GoDaddy, PersonalWeb's email host, saves deleted emails on its own servers.  (*Id.*, Ex. 5 [Oct. 26, 2012 email from A. McMillian].)

1  ████████████████████████████████████████████ (*Id.*

2  at 54:25-56:10; *see also id.*, Ex. 9 [Jarvis Ex. 7] ████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████

8  ████████████ (*Id.*, Ex. 1 [Drew Tr.] at 14:4-9, 17:23-25, 19:8-12, 32:25-33:9, 44:18-

9  46:5, 46:19-47:12.)

10       Prior to PersonalWeb's filing of this and other lawsuits, ██████████████

11  ████████████████████████████████████████████████████

12  ████████████████████ (*Id.* at 19:15-24:6, 40:16-42:9, 47:23-48:8, 51:6-23,

13  53:15-18; *id.*, Ex. 2 [Jarvis Tr.] at 201:21-25, 203:24-204:17.)  Mr. Drew testified that ████

14  ████████████████████████████████████████

15  ████████████████████████████████ (*Id.*,

16  Ex. 1 [Drew Tr.] at 37:16-38:9, 39:11-41:11.)  This work, and the executives' reactions to it, are

17  critical to Google's case.  Indeed, PersonalWeb's original infringement contentions relied solely on

18  disjointed excerpts of Google's published patent applications.  (*See, e.g.*, Dkt. # 98-8; Dkt. # 98-10;

19  Dkt. # 98-11; *see also generally* Dkt. # 98 (describing deficiencies in PersonalWeb's contentions).)

20       Mr. Drew testified that ████████████████████████████

21  ████████████████████████ (Lee Decl., Ex. 1 [Drew Tr.] at 42:5-17.) ████████

22  ████████████████████████████████████████

23  ████  (*Id.* at 28:7-24, 31:14-32, 33:21-34:3, 35:23-36:22.)

24       Mr. Drew testified that ████████████████████████████

25  ████████████████████████████████████████

26  ████████████████████████████████████

27  ████  (*Id.*, Ex. 1 [Drew Tr.] at 20:21-21:14, 39:11-40:9, 62:1-65:2, 66:7-25, 67:2-15.)  Likewise,

28  Mr. Jarvis testified that ████████████████████████████

**REDACTED**

**REDACTED**                                                                (*Id.*, Ex. 2 [Jarvis

Tr.] at 190:21-194:11.)  Other employees besides Mr. Drew and Mr. Jarvis were involved in

**REDACTED**  as indicated in the testimony cited above.  They also

would have generated emails and potentially other documents, which evidence PersonalWeb

ordered them to destroy.

Google will never know for sure the volume of deleted evidence, because PersonalWeb does

not backup its email systems (*see* Part III.B), does not know whether its email host saves deleted

items (n. 4, *supra*) and has not provided any metrics in response to Google's discovery requests to

demonstrate the volume of emails sent or received, the identity of senders or recipients, the number

of emails deleted or the date of such deletions.  (Lee Decl., Ex. 10 at 6 [Response to Request. No.

6]; Lee Decl. ¶ 9 (PersonalWeb has not produced any metrics to Google).)  Moreover, to the extent

any of this information may conceivably be ascertainable from PersonalWeb's email mailboxes or

accounts, PersonalWeb has refused to provide copies of them to Google.  (*See, e.g.*, *id.* at Request

No. 7; *id.*, Ex. 11 [May 10, 2013 letter]; *id.*, Ex. 12 [May 24, 2013 letter]; *id.*, Ex. 13 [Aug. 22, 2013

letter]; *id.*, Ex. 14 [Sept. 9, 2013 email].)

**IV.   ARGUMENT**

    **A.   Courts Have Inherent Authority To Tailor Spoliation Sanctions To Remedy
Case-Specific Conduct**

        **1.   Legal Standard**

Federal courts possess the inherent authority to preserve the integrity and expeditious

administration of the judicial process by imposing sanctions against a party who engages in

improper litigation practices.  *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326 (Fed. Cir.

2011) (citations omitted); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Spoliation,

which "occurs when one destroys or materially alters evidence [ ] in pending or reasonably

foreseeable litigation," constitutes one such sanctionable offense.  *Id.*; *Hynix Semiconductor Inc. v.

Rambus Inc.*, 897 F. Supp. 2d 939, 971, 975, 986 (N.D. Cal. 2012); *Apple Inc. v. Samsung Elecs.

Co., Ltd.*, 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012).

Courts within the Ninth Circuit enjoy "broad discretion to fashion, on a case-by-case basis, an appropriate sanction for spoliation." *Ahcom, Ltd. v. Smeding*, No. 07-1139 SC, 2011 WL 3443499, *8 (N.D. Cal. Aug. 8, 2011); *see also Leon*, 464 F.3d at 958-61 (affirming dismissal sanction, and affirming a monetary sanction "as within the district court's broad discretion"); *Hynix*, 897 F. Supp. 2d at 984 ("court has wide discretion" to impose sanctions).  In determining the appropriate sanction, courts should consider these factors:

> (1) the motive or degree of fault of the party who altered or destroyed the evidence;

> (2) the degree of prejudice suffered by the opposing party, including whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case ; and

> (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.

*Apple*, 888 F. Supp. 2d at 992 (citations omitted).  Spoliation sanctions should be determined on a case-by-case basis and should be commensurate with the court's analysis of these factors.  *Id.*; *Hynix*, 897 F. Supp. 2d at 985 (quoting *Micron*, 645 F.3d at 1329).  As discussed herein, these factors warrant dismissal of this action.

### 2.    PersonalWeb Purposefully Violated Its Duty To Preserve Evidence

PersonalWeb's degree of fault is absolute – it had a duty to preserve evidence that it willfully violated in order to gain strategic advantage in its upcoming litigation.  Specifically, when PersonalWeb instructed employees to delete and purge their emails in the months leading up to the filing of this and other lawsuits, the duty to preserve potentially relevant documents and correspondence had already attached.  That duty arises "when litigation is [ ] reasonably foreseeable."  *Micron*, 645 F.3d at 1320; *see also Hynix*, 897 F. Supp. 2d at 975-78.  Although this is an <u>objective</u> standard, "asking … whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation," this Court need not even apply the "flexible fact-specific standard" or "confront the myriad factual situations inherent in the spoliation inquiry." *Micron*, 645 F.3d at 1320.  Here, there is incontrovertible evidence that PersonalWeb <u>in fact</u> foresaw litigation when it instructed employees to delete emails and indeed ordered the destruction <u>because of</u> the upcoming litigation.

As described in Part III.B, PersonalWeb repeatedly ████████████████████████████████████████████████ (Lee Decl., Ex. 1 [Drew Tr.] at 15:4-9, 26:6-20, 107:7-9), which ████████████████████████████████████████████████

████████ (*See id.*, Ex. 2 [Jarvis Tr.] at 156:16-157:15.) By that time, PersonalWeb also had taken steps to make itself "battle ready" for the upcoming litigation, including at least by:

(i) ████████████████████████████████████████████ (*id.*, Ex. 1 [Drew Tr.] at 42:13-44:13, 54:25-56:10);

(ii) ████████████████████████████████████████████ (*id.*, Ex. 9 [Jarvis Ex. 7]);

(iii) ████████████████████████████████████████████ (*id.*, Ex. 1 [Drew Tr.] at 37:16-42:9, 47:23-48:8, 51:6-23, 53:15-18; *id.*, Ex. 2 [Jarvis Tr.] at 201:21-25, 203:24-204:17);

(iv) ████████████████████████████████████████████ (*id.*, Ex. 1 [Drew Tr.] at 28:7-24, 31:22-32:22, 35:23-36:22); and

(v) waiting until after it filed seven lawsuits before instructing employees that they should retain documents (*id.* at 33:15-25, 46:6-9, 49:6-50:9; Lee Decl., Ex. 4 at PWEB 052700-706 [Jarvis Ex. 11]).

Each of these acts demonstrates that PersonalWeb was preparing for litigation well prior to when it actually filed suit, and that it blatantly, willfully disregarded its discovery obligations in destroying documents in the months leading up to the December 2011 filings.

This Court recently entered a $250 million spoliation sanction against Rambus Inc., whose "battle ready" litigation strategy included methodical, massive destruction of documents. *Hynix*, 897 F. Supp. 2d at 979. Even though the evidence did not support a finding that Rambus had intentionally destroyed documents for the express purpose of hiding adverse information (*i.e.*, "[t]he classic case of bad faith"), the Court nonetheless held that Rambus spoliated evidence in bad faith, or at least willfully. It found that Rambus destroyed a "huge" number of documents when litigation was reasonably foreseeable and as part of a litigation plan, and that Rambus implemented its policy through an officer in charge who was experienced enough in litigation to know that relevant

1  documents should not be destroyed.  *Id.* at 979, 980-81; *SK Hynix v. Rambus, Inc.*, No. C-00-20905,

2  2013 WL 1915865, *1, 2, 19 (N.D. Cal. May 8, 2013).  The facts here warrant the same conclusion.

3       Like Rambus, PersonalWeb destroyed the bulk of its documents as part of its litigation

4  strategy.  And, PersonalWeb failed to keep any record of the documents and correspondence it

5  deleted.  (*See* Part III.B.)  Also like Rambus, PersonalWeb made no effort to retain documents that

6  were potentially relevant to its foreseeable litigation.  (*See* Part III.C.)  Further like Rambus,

7  PersonalWeb's majority owner BDE, its executives[5] (including the CEO & President Mr. Weiss and

8  the Non-Executive Chairman Mr. Bermeister), and its litigation counsel[6] were experienced enough

9  in litigation to know that documents must be retained once litigation is foreseeable.  (*See* Part III.A.)

10  Indeed, PersonalWeb's actions were a sophisticated two-step strategy designed to accomplish – and

11  then conceal – spoliation by ███████████████ REDACTED ███████████████

12  ████████████████████████ to foster the illusion that PersonalWeb was abiding by its

13  obligations.  (*See, e.g.*, Lee Decl., Ex. 1 [Drew Tr.] at 28:7-14 (discussing "pre and post lawsuit e-

14  mail retention policy").)  This is evidence of knowing, culpable spoliation for strategic advantage.

15       A party's destruction of evidence qualifies as willful spoliation if it had some notice that

16  documents were *potentially* relevant to the litigation before they were destroyed.  *Leon*, 464 F.3d at

17  959; *Hynix*, 897 F.Supp.2d at 978 ("The fundamental element of bad faith spoliation is advantage-

18  seeking behavior by the party with superior access to information necessary for the proper

19  administration of justice.").  PersonalWeb had the requisite notice.  If the deleted emails were <u>not</u>

20  relevant to the issues in this case, PersonalWeb would have had no reason to ████ REDACTED ████

21  ████████████████████████████████████████████████████████

22  ██████████████████████ (Lee Decl., Ex. 1 [Drew Tr.] at 36:14-17.)  If the documents

23  ─────────────────────

24  [5] As described in Part III.A & n. 3, Mr. Bermeister is also the CEO of BDE, which has a long
    history of litigating, including with respect to the True Names patents.  Mr. Weiss, PersonalWeb's
    CEO and ████████████████ REDACTED ████████████████, has a
    history of litigation against and with Mr. Bermeister.  (Lee Decl., Ex. 27.)

25

26  [6] PersonalWeb is represented by at least two law firms.  Its counsel in this case is Susman Godfrey.
    It is represented in other True Names cases by McKool Smith.  PersonalWeb's privilege log is

27  replete with references to communications with its outside counsel regarding its email destruction/
    "retention" actions.  (Lee Decl., Ex. 17 [PersonalWeb Supp. Priv. Log] at 1-2 (PRIV000001-33 and

28  PRIV000039-53).)

truly were not relevant to anything in the case, they would not have been subject to discovery.  *See*

Fed. R. Civ. P. 26(b).  Further, the relevance of the destroyed documents was confirmed by

PersonalWeb itself                              REDACTED

(Lee Decl., Ex. 1 [Drew Tr.] at 28:7-24, 31:14-40:3, 45:8-50:23; *see also id*., Ex. 2 [Jarvis

Tr.] at 148:18-22, 183:23-185:9, 190:21-195:19; *id*., Ex. 3 [Oct. 2011     REDACTED

*id*., Ex. 4 [Dec. 2011 & 2012 notices].)  Accordingly, PersonalWeb should be deemed to have

engaged in bad faith, willful spoliation of evidence.[7]

### 3.      Google Has Suffered And Will Continue To Suffer Irreparable Prejudice

Prejudice exists where the spoliator's actions impair the other party's ability to go to trial,

threatens to interfere with the rightful decision of the case, or forces the other party to rely on

incomplete and spotty evidence at trial.  *Leon*, 464 F.3d at 959.  In the Ninth Circuit, "spoliation of

evidence raises a presumption that the destroyed evidence goes to the merits of the case, and

further, that such evidence was adverse to the party that destroyed it."  *Apple*, 888 F. Supp. 2d at

993, 998 (citations omitted).  If it is shown that a party destroyed documents willfully or in bad

faith, the spoliating party bears a heavy burden to rebut this presumption by showing lack of

prejudice to the opposing party by clear and convincing evidence.  *Hynix*, 897 F.Supp.2d at 981

(citation omitted).  This is "because a party who is guilty of … intentionally shredding documents

… should not easily be able to excuse the misconduct by claiming that the vanished documents

were of minimal import."  *Id.* (citations omitted).  Here, because PersonalWeb willfully and in bad

faith destroyed potentially thousands of documents in the months before filing its complaint against

---

[7] For dismissal of a party's claim, spoliation sanctions can require a specific finding of willfulness, fault or bad faith.  Other sanctions do not require this finding.  *Apple*, 888 F. Supp. 2d at 998 (court need only find that party acted with "conscious disregard" of its obligations); *Herson v. City of Richmond*, No. C 09-02516 PJH (LB), 2011 WL 3516162, at *4 (N.D. Cal. Aug. 11, 2011 ) (court may impose sanctions against party that merely had notice that the destroyed evidence was potentially relevant); *see also Leon*, 464 F.3d at 958 (dismissal requires willfulness or bad faith).

Google (*see* Part IV.A.2, *supra*), the burden as to prejudice properly falls on PersonalWeb to demonstrate <u>lack</u> of prejudice, which it cannot do.

Just before filing this lawsuit, PersonalWeb had five full-time employees and between nine and eleven part-time student employees and interns. (Dkt. # 40-2, Weiss Decl. ¶¶ 7-8; Dkt. # 41-21 (listing four "management" and twelve "employees").) Mr. Drew testified that REDACTED ████████████████████████████████████████████████████████ ██████████ (Lee Decl., Ex. 1 [Drew Tr.] at 65:23-66:22.) In view of just one person's email volume, it is reasonable to estimate that PersonalWeb expunged at least several thousand emails across all of its employees' mailboxes (along with whatever attachments they may have included).

PersonalWeb cannot refute these conservative estimates. It is wholly unable to provide any metrics showing the volume of deleted email, dates of deletion, or senders/recipients of deleted email. (*See id.* at 32:13-18 (█████████ REDACTED █████████; Lee Decl. ¶ 4 (PersonalWeb has not produced any metrics).) Nor can PersonalWeb meet its "clear and convincing" burden to show that the deleted materials were irrelevant to issues in this litigation, in view of the record facts (discussed below and in Part III.C). *See Leon*, 464 F.3d at 960 (plaintiff's deletion of personal computer files constituted prejudice "because any number of the 2,200 files could have been relevant to [defendant's] claims or defenses, although it is impossible to identify which files and how they might have been used"); *SK Hynix*, 2013 WL 1915865 at *19 ("[a]s between guilty and innocent parties, the difficulties created by the absence of evidence should fall squarely upon the former"). Thus, prejudice exists as a result of PersonalWeb's bad faith or willful spoliation.

The destruction of evidence by PersonalWeb was in bad faith and willful. However, if the Court determines that the evidence does not support a finding of bad faith or willful destruction, Google "must only come forward with plausible, concrete <u>suggestions</u> as to what the destroyed evidence might have been." *Hynix*, 897 F.Supp.2d at 981 (citing *Micron*, 645 F.3d at 1328). Google has come forward with much more than "plausible, concrete suggestions."

Deposition testimony in this case establishes that, at a minimum, PersonalWeb destroyed documents relating to ████████████ REDACTED ████████████ ████████████████████████████████████████████████████████

**REDACTED**

(*See*

Part III.C, *supra*.)  These documents would have been relevant at least to PersonalWeb's

understanding of the scope of the patents and when it gained that understanding; its contentions that

StudyPods practice the patented technology, which relates to the purported scope of the patent and

potentially to damages; its infringement contentions against Google; and its claims that it is an

"innovator" of search technology.[8]  Moreover, it is probable that PersonalWeb's spoliation covered

up documentary evidence of its spoliation; Mr. Drew also testified that **REDACTED**

**REDACTED**

(Lee Decl., Ex. 1 [Drew Tr.] at 32:1-7.)

The record here establishes that evidence was destroyed that will interfere with a rightful

decision in this case, to the prejudice of Google.  *See Apple*, 888 F.Supp.2d at 993.  And, while

testimony has revealed the likely contents of many of the destroyed documents, there are others

whose contents are now unknowable as a result of PersonalWeb's spoliation.  These documents also

may have led to the discovery of admissible evidence pursuant to Federal Rule of Civil Procedure

26, and their unavailability is to the detriment of Google and the benefit of PersonalWeb.  For these

reasons, the evidence is more than sufficient to find that Google's ability to defend itself has been

adversely prejudiced by PersonalWeb's bad faith and willful destruction.

### 4.      PersonalWeb's Spoliation Justifies Dismissal Of This Action

When there is evidence that documents were destroyed with willfulness, fault, or bad faith,

and where the spoliation "undermine[s] the integrity of judicial proceedings" or is "utterly

inconsistent with the orderly administration of justice," a court may impose the severe sanction of

dismissal.  *Leon*, 464 F.3d at 958.  Before imposing the sanction of dismissal, however, the court

should consider (1) the public's interest in the expeditious resolution of litigation, (2) the court's

need to manage its dockets, (3) the risk of prejudice to the party seeking sanctions, (4) the public

policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions.

---

[8] One of the Accused Functionalities identified by PersonalWeb in this case is portions of Google's
Search system.

*Id*.; *Hynix*, 897 F.Supp.2d at 985 (quoting *Micron*, 645 F.3d at 1329) (lesser sanctions must "avoid substantial unfairness to the opposing party, and where the offending party is seriously at fault, [ ] serve to deter such conduct by others in the future").

The first and second factors, quick resolution of litigation and the Court's interest in managing its dockets, both support dismissal sanctions. *See Leon*, 464 F.3d at 958 n. 5 (plaintiff's destruction of documents impeded resolution of the case and impacted the court's docket by impeding the factual predicate of the case and consuming months of sanction-related litigation); *State Farm Fire & Cas. Co. v. Broan Mfg. Co., Inc.*, 523 F. Supp. 2d 992, 997 (D. Ariz. 2007) ("Destruction of the fire scene has obscured the factual predicate of the case, and the Court has spent significant resources investigating and resolving the spoliation issues. The first two factors therefore support dismissal."); *cf. Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 327 n.31 (D. Del. 2013) (finding a dispositive sanction to be supported by the first two *Leon* factors, and noting that "an evidentiary sanction would further delay the case while producing the same substantive result"). The third factor, prejudice to Google in view of PersonalWeb's spoliation, also supports dismissal because Google has been forever prevented from obtaining relevant discovery relating at least to the scope of the patents-in-suit; analysis of Google's own patents and systems; PersonalWeb's development and analysis of StudyPods, a product alleged to embody the claimed inventions; and potential damages-related discovery vis-à-vis StudyPods and patent marking. (*See* Part IV.A.3, *supra*.)[9]

As to the fifth factor, whether there is a lesser sanction that would avoid substantial unfairness to Google and deter future spoliation misconduct by PersonalWeb and others, the egregiousness of PersonalWeb's misconduct favors dismissal of this action. PersonalWeb intentionally destroyed relevant evidence because of the upcoming litigations, and attempted to hide its litigation-inspired "business" activities (including its pre-suit analysis of Google's technology, and its attempt to incorporate the True Names technology into StudyPods ███ REDACTED ███ ███████████████████████████████). (*See* Part III.C, *supra*.) And, PersonalWeb

---

[9] Factor four – public policy favoring disposition of cases on their merit – is insufficient to preclude dismissal sanctions, where that sanction is otherwise appropriate. *Leon*, 464 F.3d at 960-61.

ordered destruction of documents specifically to ██████████ REDACTED ██████████ ████████ thereby circumventing the very same discovery obligations that Google and other defendants would be, and have been, subject to.[10]  (*See* Part III.B, *supra*.)

On these facts, dismissal of this action is the appropriate sanction.  Allowing a party to willfully and purposefully set up a scheme to destroy evidence <u>because of</u> upcoming litigation, which happened here, and then avoid dismissal, threatens to destroy the deterrence value of spoliation sanctions.  *See Leon*, 464 F.3d at 957, 960 (affirming dismissal sanction where exclusion of evidence would have been "futile" because the most salient evidence had been destroyed, and an adverse inference would still have left the non-spoliating party without evidence); *State Farm*, 523 F. Supp. 2d at 996-998 (dismissing case because "lesser sanctions do not address the fact that Defendant has limited evidence available upon which to construct its defense" as a result of the plaintiff's actions, and the plaintiff did not preserve key evidence); *Allstate Ins. Co. v. Sunbeam Corp.*, 865 F. Supp. 1267, 1278-79 (N.D. Ill. 1994) (dismissing case where the defendant was "inextricably harmed in its ability to defend the lawsuit" and that "[t]hat prejudice cannot be overcome by a limiting instruction").

### 5.    Alternate Sanctions In The Event Dismissal Is Not Granted

The level of culpability here is more than sufficient to support dismissal.  Lesser sanctions can be appropriate where a party's destruction was not in bad faith, but merely in conscious disregard of its duty to preserve evidence.  PersonalWeb's conduct also meets this lesser standard.

PersonalWeb decided whether litigation over the True Names patents would ensue against Google and others, and it decided to destroy documents in advance of filing those suits.  *See Apple*,

---

[10] PersonalWeb has made the most of its self-created disparity in the parties' relative volumes of documents.  While PersonalWeb has produced approximately 5500 files (which do not include the work done vis-à-vis Google and other defendants, described in Part III.C), Google has produced more than 10,000 documents and source code files on systems that PersonalWeb has <u>actually</u> accused, and more than 30 gigabytes of source code on systems that PersonalWeb has <u>not</u> accused.  Further, PersonalWeb has repeatedly sought from Google ever-more expansive discovery on non-accused systems and technology.  Indeed, PersonalWeb has taken the position that the discovery process entitles PersonalWeb to demand source code and technical documents on essentially every system at Google – a demand made more striking by PersonalWeb's own efforts to shield discovery of itself through destruction.

888 F.Supp.2d at 998 ("as the plaintiff-patentee, Apple's decision of whether to litigate or not was

the determining factor in whether or not litigation would in fact ensure").  PersonalWeb must suffer

the consequences of its decisions to forever dispose of its own documents.  *See SK Hynix*, 2013 WL

1915865 at *19 (failure to keep records of what was destroyed "makes it impossible to tell what

evidence was lost" such that spoliator "must suffer the consequences of that uncertainty"); *Hynix*,

897 F.Supp.2d at 981 (despite possibility that spoliator did not destroy any evidence that would

have been beneficial to other party's litigation position, because spoliator was "the party that

destroyed documents by the box and bag without keeping any record of what was destroyed," it

must "suffer the consequences of that uncertainty").  For less-culpable parties, available sanctions

include adverse inferences, issue preclusion and evidentiary sanctions.  *Cyntegra, Inc. v. Idexx

Labs., Inc.*, No. 06-4170, 2007 WL 5193736, *2 (C.D. Cal. Sept. 21, 2007).  If the Court determines

that dismissal is not appropriate, Google requests that each of the following sanctions be imposed.

### a.    Adverse Inference

An adverse inference sanction is appropriate when (1) the party having control over the

evidence had an obligation to preserve it at the time it was destroyed, (2) the records were destroyed

with a culpable state of mind, and (3) the evidence was relevant to the party's claim or defense such

that a reasonable trier of fact could find that it would support that claim or defense.  *Apple*, 888 F.

Supp. 2d at 989 (citations omitted); *S.E.C. v. Mercury Interactive LLC*, No. 3:07-cv-02822, 2012

WL 3277165, *10 (N.D. Cal. 2012).

PersonalWeb's actions meet the criteria for an adverse inference sanction.  *First*,

PersonalWeb had control over the emails that it ordered destroyed, and it had an obligation to

preserve them.  (*See* Part III.B.)  *Second*, PersonalWeb possessed the necessary culpability.  It

willfully and in bad faith issued instructions to delete emails (*see* Part IV.A.2), or at the very least

acted knowingly or negligently.  *See Cyntegra*, 2007 WL 5193736 at *7.  *Third*, the documents that

were destroyed were relevant to issues in this case, including at least the scope of the patents-in-

suit, infringement, whether PersonalWeb in fact practices the patented technology, and damages.

(*See* Parts III.C & IV.A.2.)  In addition, because "the documents were deleted and independent

verification is impossible," any attempt by PersonalWeb to characterize the missing documents as

"irrelevant" are not sufficient.  *Cyntegra*, 2007 WL 5193736 at *2; *see also Mercury Interactive*, 2012 WL 3277165 at *10 (the presence of bad faith automatically establishes relevance).

If the Court determines that an adverse inference is appropriate, Google requests that it be permitted to submit language for a proposed jury instruction during pre-trial, when the parties would otherwise submit jury instructions to the Court.  *See In re Napster*, 462 F.Supp.2d 1060, 1078 (N.D. Cal. 2006) (imposing adverse inference instruction, with precise wording to be determined at trial).  At the very least, the adverse inference should be directed towards Google's alleged infringement of the patents-in-suit and any damages PersonalWeb could argue it was entitled to.  *See Keithley v. Homestore.com, Inc.*, No. C-03-04447, 2008 WL 3833384, *1, 17 (N.D. Cal. Aug. 12, 2008) (tailoring adverse inference instruction to evidence that was destroyed).

### b.  Issue Preclusion And Evidentiary Sanctions

In fashioning sanctions remedies, courts should be "mindful of the need to punish and deter intentional acts or omissions contrary to the rules of discovery" while also formulating a remedy that is in "proportion to the actual harm wrought by the failure to meet those discovery obligations." *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340, 2007 WL 1848665, *6 (N.D. Cal. Jun. 27, 2007).  In doing so, courts may fashion sanctions to address particular claims and issues in dispute.  *See id.* at *5, 6 (court ordered monetary sanctions and also tailored additional sanctions to the claims remaining in the case, thereby deeming it judicially established that spoliator bid with deliberate intent, and that the "strength of mark" factor weighs in favor of Google); *see also Hynix*, 897 F.Supp.2d at 986 (where claims had been fully tried before resolution of the spoliation issues, court sanctioned spoliator by striking from the record evidence supporting any royalty in excess of a reasonable, non-discriminatory royalty and ordering parties to submit briefs addressing what a reasonably, non-discriminatory rate would be).

As already discussed, the documents that PersonalWeb destroyed go to critical issues in this case, including PersonalWeb's understanding of the patents-in-suit, Google's alleged infringement of the patents-in-suit, PersonalWeb's purported practice of the relevant technology, PersonalWeb's patent marking strategy and potential damages.  (*See* Part III.C, *supra*.)  Because the subject matter of the destroyed documents is so broad and far-reaching, dismissal sanctions are appropriate.

Failing that, issue preclusion and evidentiary sanctions are appropriate, as in *Google* and *Hynix*. PersonalWeb should – at the very least – be (a) precluded from relying on any of Google's patents or published patent applications in any way, either at deposition or at trial;[11] (b) precluded from relying on any evidence sponsored by PersonalWeb from any time period prior to its destruction, including any evidence related to PersonalWeb or its own created StudyPods "product" for any reason; and (c) limited on any damages it can claim from any period at or prior to its destruction of evidence.

### 6.    PersonalWeb's Spoliation Warrants Monetary Sanctions, Including Cost-Shifting Of Google's Discovery Expenses To PersonalWeb

Monetary sanctions are also an available remedy for spoliation, and require no demonstration of prejudice. *Herson*, 2011 WL 3516162 at *4 (citations omitted).  In the event that the Court determines that monetary sanctions are appropriate, those amounts should be at least sufficient to reimburse Google for spoliation-related discovery[12] and motions practice, which amounts Google can provide.  *Ahcom*, 2011 WL 3443499 at *9 (awarding monetary sanctions related to plaintiff's efforts to pursue spoliation and raise it with the court).

In addition, the Court should shift the costs of Google's document collection, review and production to PersonalWeb, as a penalty for PersonalWeb having destroyed its own documents in an effort to avoid or minimize its own document discovery and related production expenses.  *See AdvantaCare Health Partners, LP v. Access IV*, No. C-03-04496, 2004 WL 1837997, *4 (N.D. Cal. Aug. 17, 2004) (courts should exercise their discretion to "fashion a sanction appropriate for the specific conduct abusive of the judicial process"); *Cyntegra*, 2007 WL 5193736 at *7 (courts have "the discretion to impose a wide arrange of monetary sanctions").  Because discovery in this case is still ongoing, if the Court determines that a monetary sanction in the form of discovery cost-shifting

---

[11] *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) (affirming exclusion of evidence as sanction for spoliation).

[12] To date, spoliation-specific discovery includes at least Google's preparation for and taking of the depositions of Jake Drew and Joshua Jarvis; written discovery requests; document review; and correspondence and conferences with PersonalWeb's counsel regarding spoliation.  In the event that the Court awards Google its costs, fees and expenses, Google will submit them upon conclusion of the briefing of this motion, or as the Court otherwise directs.

is appropriate, Google will submit its expenses within a reasonable time following the close of

discovery, or otherwise as the Court so orders.

### B.    Pursuant To The Crime-Fraud Exception, PersonalWeb Cannot Shield Attorney-Client Communications Or Work Product From Discovery

Mr. Drew's testimony suggests REDACTED

REDACTED

(*See* Part III.B, *supra*; Lee Decl., Ex. 1 [Drew Tr.] at 28:7-24 REDACTED

REDACTED

33:21-34:4 REDACTED

*but see id.* 28:25-30:5, 30:11-16, 33:21-

34:4, 34:5-20 ( REDACTED ).)  In fact, prior to Mr. Drew's

deposition, PersonalWeb's counsel threatened Mr. Drew with legal action if he communicated with

Google or others – based purportedly on a "confidentiality" provision of his employment

agreement, which cannot shield facts from discovery – on the grounds that he "holds attorney-client

privileged information from his tenure at PersonalWeb."  (Lee Decl., Ex 15 [Aug. 9, 2012 letter].)

Following his deposition, PersonalWeb's counsel objected to Mr. Drew's testimony "to the extent

that he may have violated his obligations not to disclose attorney-client or confidential information

from the scope of his employment at PersonalWeb" and again threatened legal action in an attempt

to hide evidence of spoliation.  (Lee Decl., Ex. 16 [Oct. 10, 2012 email].)

During subsequent telephone discussions between Google's and PersonalWeb's counsel on

the spoliation issues, PersonalWeb indicated that it would rely on attorney-client privilege vis-à-vis

its document retention policies and any deletion instructions, and refused to produce any

communications or other evidence relating thereto.  (*See, e.g., id.*, Ex. 14 [Sept. 9, 2013 email].)

PersonalWeb's privilege log indicates a number of communications in November and December

2011 between counsel (including lawyers from both firms that represent PersonalWeb in these True

Names lawsuits, McKool Smith and Susman Godfrey) and PersonalWeb (including Mr. Weiss RE DA

that are described as "confidential

1  communication[s] regarding document [or email] retention policy." (Lee Decl., Ex. 17 [May 6,

2  2012 Supp. Log].)  None of these entries are dated before November 30, 2011 (*id.*), which supports

3  the conclusion either that (i) PersonalWeb failed to log relevant spoliation-related communications

4  and work product, or (ii) PersonalWeb destroyed such evidence – along with the other emails and

5  communications described above – long before it provided its privilege log to Google in May 2012.

6       Google requests that PersonalWeb be barred from asserting privilege or work product over

7  any information relating to the adoption, implementation, and consequences of its document

8  destruction policy under the crime-fraud exception, and that it be ordered to produce relevant

9  materials to Google, or to identify with specificity that materials that already have been destroyed.

10 *See generally In re Grand Jury Proceedings*, 87 F.3d 377, 381-83 (9th Cir. 1996).  While the

11 attorney-client privilege and work product protections exist to encourage full and frank disclosure

12 of information between clients and their attorneys for the purposes of securing sound legal advice,

13 those protections cannot shield otherwise privileged materials when a party acts in concert with its

14 attorney(s) to commit a crime or engage in other wrongful enterprises.  *Id.*; *U.S. v. Zolin*, 491 U.S.

15 554, 562 (1989) (the crime-fraud exception exists to assure that the "seal of secrecy" between

16 lawyer and client is not exploited for the purpose of getting advice for the commission of a fraud,

17 crime or other substantial abuse of the attorney-client relationship).

18      In the Ninth Circuit, the crime-fraud exception requires a prima facie showing of (i)

19 communications in furtherance of an intended or present illegality, and (ii) some relationship

20 between the privileged materials and the violation.  *See In re Grand Jury Proceedings*, 87 F.3d at

21 380 (citations omitted).  The prima facie showing is "not a particularly heavy burden."  *Micron*, 645

22 F.3d at 1330 (citation omitted).  Movants need only show "reasonable cause to believe that the

23 attorney's services were utilized . . . in furtherance of the ongoing unlawful scheme," but are not

24 required to prove beyond a reasonable doubt the elements of the crime.  *In re Grand Jury*

25 *Proceedings*, 87 F.3d at 381 (citation omitted).  The crime-fraud exception extends beyond the

26 criminal and common-law fraud contexts to spoliation cases such as this one, where

27 communications and attorney work product may be implicated "in furtherance of an intentional tort

28 that undermines the adversary system itself."  *Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376,

1    380 (D.N.J. 2006) (citation omitted); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d

2    1336, 1347 (Fed. Cir. 2011) (crime-fraud exception applies to the intentional destruction of

3    evidence in advance of litigation); *Micron*, 645 F.3d at 1329-31 (same); *In re Sealed Case*, 754 F.2d

4    395, 400 (D.C. Cir. 1985) (same).  Indeed, the California Penal Code makes it illegal to willfully

5    destroy documents with the intent to prevent them from being produced in a trial, knowing that they

6    are soon to be produced.  *See* Cal. Penal Code § 135; *Hynix*, 645 F.3d at 1347 (citing same);

7    *Micron*, 645 F.3d at 1329-31 (citing same).

8         Here, the record evidence establishes the prima facie showing necessary to pierce any

9    purported attorney-client or work product privilege in connection with PersonalWeb's intentional,

10   systematic and thorough destruction of relevant evidence.  (*See* Part III, *supra*.)  PersonalWeb's

11   privilege log – scant as it is on the subject of PersonalWeb's "document retention policy" – and its

12   communications with Google and others concerning Mr. Drew's testimony and his alleged

13   possession of privileged information, show that at least some communications occurred between

14   PersonalWeb and its counsel related to spoliation.  Under the crime-fraud exception, any such

15   "document retention policy" or similar communications and work product should not be protected

16   from disclosure.

17        Accordingly, Google requests that the Court pierce privilege to permit full discovery on the

18   issue of spoliation.  *See Micron*, 645 F.3d at 1330-31 (upholding district court's use of the crime-

19   fraud exception to pierce the attorney-client privilege); *Hynix*, 645 F.3d at 1347 (affirming decision

20   to pierce privilege).

21   **V.      CONCLUSION**

22        For the reasons set forth above, Google requests that the Court find that PersonalWeb

23   spoliated evidence relevant to this litigation, and that it enter an appropriate sanction against

24   PersonalWeb for its misconduct.  Google also requests that the Court pierce any claimed attorney-

25   client privilege or work product privilege, to permit discovery and investigation into whether and to

26   what extent PersonalWeb's counsel was involved in the spoliation of evidence.  Google further

27   requests that costs for any such investigation be borne by PersonalWeb.

28

Dated:  November 8, 2013

By:   */s/ Michael A. Berta* (with permission)
Michael A. Berta (SBN 194650)
ARNOLD & PORTER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Phone: (415) 471-3100
Fax: (415) 471-3400
michael.berta@aporter.com

Nicholas H. Lee (SBN 259588)
ARNOLD & PORTER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
Phone: (213) 243-4000
Fax: (213) 243-4199
nicholas.lee@aporter.com

Sara P. Zogg (admitted *pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Phone: (202) 942-5000
Fax: (202) 942-5999
sara.zogg@aporter.com

*Attorneys for Defendants*
GOOGLE INC. and YOUTUBE, LLC