*E-Filed: January 17, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC,<br><br>　　　　Plaintiff,<br>　v.<br><br>GOOGLE INC. and YOUTUBE, LLC,<br><br>　　　　Defendants. | No. C13-01317-EJD (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**<br><br>**REPORT AND RECOMMENDATION**<br><br>**[Re: Docket No. 206]** |

PersonalWeb Technologies LLC ("PersonalWeb") sues Google Inc. and YouTube LLC (collectively, "Google") for infringement of its patents related to the use of content-based identifiers in data storage. This case originated in the Eastern District of Texas and was transferred to this District in August 2013 following the order on claim construction. *See* Transfer Order, Dkt. 179. Prior to transfer, in June 2013, Judge Davis of the Eastern District of Texas ordered Google to produce certain source code. *See* Memorandum and Opinion Order, Dkt. 163, "Order on Motion to Compel." PersonalWeb now seeks leave to amend its complaint and infringement contentions based on discovery allegedly produced pursuant to that order.[1]  *See* Motion for Leave to Amend,

---

[1] The motion for leave to amend infringement contentions is properly before the undersigned, the referral judge in this matter. However, PersonalWeb also moves for leave to amend its complaint, which would normally proceed before the presiding judge. However, because the issues are the same, but the standard for amendment of pleadings much less stringent, the undersigned will issue an order on the motion for leave to amend infringement contentions and a report and recommendation as to the motion for leave to amend the complaint.

1  Dkt. 206-4, "Motion." Google opposes the Motion. *See* Defendants' Opposition to Plaintiff's
2  Motion for Leave to Amend, Dkt. 222-4, "Opposition." Based on the papers, as well as the
3  arguments of counsel at the December 10, 2013 hearing, PersonalWeb's motion is GRANTED IN
4  PART and DENIED IN PART.

## BACKGROUND

6  PersonalWeb's original infringement contentions served in July 2012 named "Google Filing
7  System" as the accused instrumentality. *See* Reply in Support of Motion for Leave to Amend, Dkt.
8  224-4, "Reply." PersonalWeb contends that it used the term "Google Filing System" to generically
9  refer to the entirety of systems used by Google to store data files. However, according to Google,
10 Google File System ("GFS") is the name given to a specific filing system, distinct from its other
11 filing systems such as Colossus (which had largely replaced GFS by the time of this dispute). As a
12 result of this apparent misunderstanding, PersonalWeb was unsatisfied by Google's production of
13 discovery, including source code only for GFS. PersonalWeb then served its first amended
14 infringement contentions, which named as the Accused Instrumentality, "Google Filing System,"
15 including "Google's earlier version of its file system (aka GFS I)" as well as the "newer version of
16 Google's file system (aka GFS II or Colossus)." Reply, Ex. 4. Around the same time, October
17 2012, it filed its first motion to compel. *See* Motion to Compel, Dkt. 122.

18 Ultimately, the parties agreed without court involvement that PersonalWeb would withdraw
19 its motion to compel and amend its infringement contentions to accuse Colossus, and that Google
20 would produce the requested discovery, including Colossus source code. Pursuant to the agreement,
21 Google provided some discovery of Colossus code, and PersonalWeb served its second amended
22 infringement contentions in January 2013, naming as accused instrumentality, "Google and
23 YouTube File System – Colossus." Motion, Ex. 7. However, the contentions also repeatedly noted
24 that they were incomplete and subject to change due to Google's sporadic and deficient production
25 of source code, particularly its failure to produce code related to the generation of the File ID used
26 by Colossus.

27 PersonalWeb filed a second motion to compel in February. *See* Motion to Compel, Dkt.
28 122. Google opposed the motion, contending that it had produced all the requested code and that

1  any purported deficiency was a result of PersonalWeb's inconsistent and shifting infringement
2  contentions. *See* Response to Motion to Compel, Dkt. 132. Judge Davis of the Eastern District of
3  Texas rejected Google's argument that PersonalWeb's contentions were to blame, and he ordered
4  Google to produce the requested discovery, including Colossus client code, by the end of July. *See*
5  Order on Motion to Compel.

After the production deadline provided by Judge Davis' order, Google sent PersonalWeb a letter confirming that it had produced all the code subject to the order. *See* Motion, Ex. 1. However, Google objected to what it viewed as PersonalWeb's newly contrived assertion that the Order entitled it to disclosure of the source code of all Colossus clients, as opposed to being limited to Colossus source code used to communicate with clients. Eventually, although never conceding it was ordered to, Google produced tens of gigabytes of code of Colossus clients, including Blobstore, in early September 2013. This disclosure of Blobstore source code is the primary basis for PersonalWeb's proposed third amended infringement contentions, served in early November 2013, in which the Accused Instrumentalities are now identified as "Google Intermediate Layer Storage Systems – Blobstore 1 and Blobstore 2." Motion, Ex. 14. In addition to the newly accused instrumentalities, Google asserts that the new contentions add two new patents, seventeen new claims, and twenty-nine new infringement allegations.

## LEGAL STANDARD

"Amendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. The good cause inquiry "considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted. *Acer, Inc. v. Tech. Props. Ltd.*, No. 08–cv–00882JF (HRL), 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-68 (Fed. Cir. 2006)). "The burden is on the movant to establish diligence rather than on the opposing party to establish lack of diligence." *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. C09-00355, 2011 WL 5574807, at *1 (N.D. Cal. Nov. 16, 2011) (quoting *O2 Micro*, 467 F.3d at 1366). "However, even if the movant was arguably not diligent, the court retains discretion to grant leave to amend." *Linex*

*Techs., Inc. v. Hewlett-Packard Co.*, No. C13-159 CW, 2013 WL 5955548, at *1 (N.D. Cal. Nov. 6, 2013); *see also Apple Inc. v. Samsung Electronics Co.*, No. CV 12-00630 LHK, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) (granting leave to amend infringement contentions, even though court found plaintiff failed to establish diligence, because of lack of prejudice to the defendants). "In considering the party's diligence, the critical question is whether the party could have discovered the new information earlier had it acted with the requisite diligence." *Apple*, 2012 WL 5632618, at *2 (internal quotation marks omitted).

"The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed . . . ." *LG Electronics Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002) (quoting *Atmel Corp. v. Information Storage Devices, Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. 1998)). However, the expectation that a "patentee would have a precise sense of its infringement theory at the outset" is "unrealistic . . . [where] the patentee may not have been able to get access to the necessary information because it is hidden from view (for example, source code)." Peter S. Menell et al., Federal Judicial Center, *Patent Case Management Judicial Guide* 4-14 (2009). Thus, the good cause standard of Patent L.R. 3-6 "serves to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case." *Apple*, 2012 WL 5632618, at *2. "Courts typically grant leave to amend infringement contentions after a patentee has been given the opportunity to inspect relevant source code." *Linex*, 2013 WL 5955548, at *2.

## DISCUSSION

### A. PersonalWeb's Diligence

PersonalWeb contends that it should be granted leave to amend its infringement contentions because it has diligently sought the source code that Google impermissibly withheld, and it moved for leave to amend within a reasonable time after receiving the code on which it bases its amendments. On the contrary, Google asserts that PersonalWeb had never requested Blobstore source code (or made any request that would reasonably include it) until July 2013 when it realized that neither of the accused systems, GFS or Colossus, actually infringed. PersonalWeb cites to

4

numerous examples of letters, email exchanges, and other documents showing that its past discovery requests do encompass the Blobstore source code. Google counters with its own examples of communications from PersonalWeb which indicate that its requests were in fact significantly more limited than it now contends.

The scope of PersonalWeb's contentions and discovery requests versus Google's corresponding obligation to produce is a recurring theme in this litigation. The issue appears to have first arisen when Google asserted that the accused instrumentality in the original infringement contentions, Google Filing System, was just one specific part within its larger filing system, while PersonalWeb maintained it was accusing the entirety of Google's filing system, not just GFS. Because this issue keeps coming up, each party argues that the other is engaged in a pattern of bad behavior. PersonalWeb insists that Google has been uncooperative in discovery, producing relevant code in piecemeal fashion while refusing to disclose critical discovery unless faced with court intervention. On the other side, Google maintains that PersonalWeb is on a fishing expedition, shifting theories and demanding additional discovery every time its previous theory fails.

Each side presents a fairly convincing case, and the Court is sympathetic to the positions of both. However, this is not the first time a Court has been confronted with these arguments, as Judge Davis addressed them in his order on PersonalWeb's second motion to compel in June 2013. *See* Motion, Ex. 1. Judge Davis presided over this litigation, as well as several related cases involving PersonalWeb as a plaintiff, for over a year and a half, and his previous assessment of the parties' respective behavior is accorded substantial weight. Moreover, this Court is not interested in rehashing old arguments. Accordingly, Judge Davis' order granting PersonalWeb's motion to compel, which emphasized the broad scope of discovery, criticized Google's piecemeal production, and firmly rejected Google's assertion that it could not understand PersonalWeb's shifting theories of infringement, is sufficient evidence that PersonalWeb had generally been diligent in its pursuit of source code to that point. Thus, if the Court finds that PersonalWeb had previously requested the Blobstore source code and/or the source code was subject to the Order to compel, then the PersonalWeb need only further show that it diligently sought amendment following Google's production of the source code.

5

PersonalWeb contends that the Blobstore code was subject to the Order to compel, which broadly ordered that "Google must provide the requested source code and documents," having found that "Google's current level of production is insufficient." Reply, Ex. 1. PersonalWeb's proposed order on its motion to compel, while not conclusive as to what the court actually ordered produced, is nonetheless indicative of the information PersonalWeb was seeking that was the subject of the order. *See* Reply, Ex. 2. The proposed order includes, "<u>For Colossus</u>: (a) Client code that requests a file be written to Colossus; (b) Colossus code that processes the write request." *Id.* Because Blobstore is considered a "client" of Colossus, this request would appear to encompass Blobstore code that requests a file be written to Colossus. However, Google points to several other documents, including PersonalWeb's own infringement contentions' definition of "client," indicating that the parties had used "client code" to refer to Colossus' client API code. Moreover, argues Google, that this reference to client code fell under the header "For Colossus" indicates that it refers to dedicated Colossus code, not the dedicated code of clients such as Blobstore. On the other hand, the juxtaposition of "Client code" and "Colossus code" indicates that the two are distinct from one another, and that Client code must refer to something other than Colossus code. This is but one of many examples of the ambiguity that pervades the parties' communications, and it is simply not clear whether PersonalWeb was specifically asking for the source code of other systems, whether Google knew what PersonalWeb was asking for, or for that matter, whether PersonalWeb even knew exactly what PersonalWeb was asking for. There is inevitably some disconnect between the parties when one holds all the information, particularly with respect to something as inaccessible as source code, and the receiving party can only be expected to make educated good faith requests for the relevant material using as specific terms as it knows how. Here, the Court thinks that PersonalWeb has done just enough to show that it did seek the Blobstore source code by making requests for categories of code which encompass it.

Additionally, it is curious that Google would produce the Blobstore source code if it truly believed the material was not subject to the order or even discoverable in light of PersonalWeb's contentions. Google's asserted reason for disclosing the information – to avoid a protracted discovery battle and waste of court resources – is generally commendable. However, Judge Davis

6

had just criticized Google for not seeking court intervention for clarification of PersonalWeb's infringement contentions and related discovery requests. Thus, if Google thought that PersonalWeb was manipulating the language of the Order and again overreaching in discovery, it should have heeded the court's advice and sought judicial relief, particularly since the case was still in the Eastern District of Texas when this dispute arose. Furthermore, Google's production did not actually avoid judicial intervention; it merely kicked the can down road to this Court, which was a foreseeable consequence.

Because PersonalWeb requested production of the Blobstore source code, albeit indirectly, and Judge Davis ordered Google to produce the requested code, PersonalWeb meets the requisite degree of diligence in seeking the Blobstore source code to that point. The question remaining in the diligence inquiry is whether PersonalWeb diligently sought leave to amend after receiving the source code. A declaration from PersonalWeb's code review consultant states that he took two trips to California (2-3 days each) during September to review the 28GB of code produced by Google, who had previously produced only 1.8GB of code. Other members of his team spent a total of 14 days reviewing the code, the last day of review being October 1. PersonalWeb filed the instant motion for leave to amend on November 4, 2013, having previously served the proposed amendments. The Court finds that PersonalWeb has met the requisite level of diligence in seeking leaving to amend after receiving the discovery on which it bases its amendment.

B. Prejudice to Google

Google asserts that allowing amendment to the infringement contentions will substantially prejudice Google because it would significantly increase the scope of the litigation just prior to the close of discovery. PersonalWeb denies that it is broadening the scope of the litigation because its position is that it has accused the entirety of Google's filing system from the beginning. With the recent production of source code, it has now honed in on the source of the infringement.

Google also asserts that it does not have enough time to research and formulate its defenses for the two new patents and seventeen new patent claims added by the proposed third amended infringement contentions. PersonalWeb asserts, somewhat conclusorily, that there is enough time. At the hearing, Google stated that although the "new" patents were in fact raised in the complaint, it

7

had not so much as looked at those patents because PersonalWeb did not include them in prior infringement contentions (PersonalWeb did not dispute that such an approach was reasonable). Moreover, Google did not consider the additional patents for the *Markman* proceedings.

While Google's point that Blobstore is an entirely different system from GFS/Colossus with its own dedicated source code and team of engineers is well taken, the Court is not convinced that Google is substantially prejudiced by the inclusion of this system as an accused instrumentality. If Google does in fact need additional time to adequately prepare its defense in view of the addition of Blobstore as an accused instrumentality, it may so request from the presiding judge; PersonalWeb would hardly be in a position to object to a reasonable extension. Therefore, good cause exists to amend PersonalWeb's infringement contentions to accuse Blobstore, at least with respect to the patents already asserted in its previous infringement contentions.

Google has, however, demonstrated that the addition of two new patents to PersonalWeb's infringement contentions would cause some degree of prejudice. Given PersonalWeb's less than overwhelming demonstration of diligence and its lack of reasoned opposition to Google's claim of prejudice with respect to the newly asserted patents, the Court finds that good cause does not exist to grant PersonalWeb leave to amend its infringement contentions to add the two new patents. In other words, PersonalWeb may amend its infringement contentions as proposed, except that it may not include contentions relating to the '539 and '544 patents.

Accordingly, PersonalWeb's motion for leave to amend is GRANTED IN PART and DENIED IN PART. PersonalWeb shall serve the amended infringement contentions in conformity with this order within seven (7) days from the date of this order.

**IT IS SO ORDERED.**

REPORT AND RECOMMENDATION

This Court further recommends that PersonalWeb's motion for leave to amend its complaint be granted.

Dated: January 17, 2014

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

8

**C13-01317-EJD (HRL) Notice will be electronically mailed to:**

Adam Hockensmith  ahockensmith@susmangodfrey.com, jdunaven@susmangodfrey.com

Allen Franklin Gardner  allengardner@potterminton.com

Ashley Lauren McMillian  amcmillian@susmangodfrey.com

Davida P Brook  dbrook@susmangodfrey.com, eball@susmangodfrey.com

Daymon Jeffrey Rambin  jrambin@capshawlaw.com

Elizabeth DeRieux  ederieux@capshawlaw.com

Joseph S. Grinstein  jgrinstein@susmangodfrey.com, tadkins@susmangodfrey.com

Justin Adatto Nelson  jnelson@susmangodfrey.com

Kalpana Srinivasan  ksrinivasan@susmangodfrey.com, hdanielson@susmangodfrey.com

Matthew M. Wolf  matthew.wolf@aporter.com

Max Lalon Tribble , Jr  mtribble@susmangodfrey.com, tadkins@susmangodfrey.com

Michael Anthony Berta  michael.berta@aporter.com

Michael E Jones  mikejones@potterminton.com

Nicholas Lee  nicholas.lee@aporter.com

Nicholas H Lee  nicholas.lee@aporter.com, donna.johnson@aporter.com, elizabeth.tryon@aporter.com, john.fitzpatrick@aporter.com, MaryAnne.Donaldson@aporter.com

Sandeep Seth  sseth@susmangodfrey.com, pgoff@susmangodfrey.com

Sara Patricia Zogg  sara.zogg@aporter.com

Sidney Calvin Capshaw , III  ccapshaw@capshawlaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**