**ARNOLD & PORTER LLP**
Michael A. Berta (SBN 194650)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Phone: (415) 471-3100
Fax: (415) 471-3400
michael.berta@aporter.com

Nicholas H. Lee (SBN 259588)
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
Phone: (213) 243-4000
Fax: (213) 243-4199
nicholas.lee@aporter.com

Sara P. Zogg (admitted *pro hac vice*)
555 Twelfth Street, NW
Washington, DC 20004
Phone: (202) 942-5000
Fax: (202) 942-5999
sara.zogg@aporter.com

Attorneys for Defendants
Google Inc. and YouTube, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, | Case No. 5:13-cv-01317-EJD (HRL) |
| Plaintiffs, | **DECLARATION OF MICHAEL A. BERTA IN RESPONSE TO THE COURT'S ORDER [DKT. # 267] GRANTING IN PART DEFENDANTS' MOTION FOR SANCTIONS** |
| v. | |
| GOOGLE INC. and YOUTUBE, LLC, | Hearing Date:   N/A |
| Defendants. | Hearing Time:   N/A<br>Courtroom:   N/A<br>Judge:   Hon. Howard R. Lloyd |

1    I, Michael A. Berta, declare as follows:

2        1.      I am a partner in the law firm of Arnold & Porter LLP, counsel for defendants

3    Google Inc. and YouTube LLC (collectively, "Google") in this action.  I have personal knowledge

4    of the facts stated herein and found within the attached documents, and if called to testify, could and

5    would competently testify thereto.  I provide this declaration with supporting documentation

6    pursuant to the Court's Order (D.I. 267) granting monetary sanctions sufficient to reimburse Google

7    for reasonable attorney's fees and costs associated with Google's spoliation-related discovery and

8    motions practice.

9        2.      I am the day-to-day partner responsible for this litigation.  I have worked extensively

10   on this case and have first-hand knowledge of the efforts made on the issue of spoliation.  I am a

11   member in good standing with the California State Bar and am a 1997 graduate of Georgetown

12   University School of Law.  I have approximately 16 years of intellectual property litigation

13   experience.  My billing rates for this matter are as follows: $652/hour in 2012 and $681/hour in

14   2013 & 2014.  My billing rates for this matter are discounted from my standard rates.  My rate for

15   this matter is consistent with the market rate for intellectual property litigation services at my level

16   of experience, as shown by the American Intellectual Property Law Association's 2013 Report of

17   the Economic Survey discussed below.

18       3.      I regularly review the billing records for this matter before our firm sends any bills to

19   the client, and I have reviewed the billing records with respect to the spoliation defense in this

20   matter.  As the day-to-day litigation partner for this matter, I supervise the billings of attorneys and

21   staff in this matter, including for budgetary purposes.  In the ordinary course of business, attorneys

22   and paralegals at Arnold & Porter prepare and enter their time into a time recording database.  As a

23   matter of firm policy and regular practice, these individuals enter their time at or near the time that

24   they perform their work.  The time entries of attorney and paralegals are kept and maintained in the

25   ordinary course of business within our time entry database.  Time records are maintained both on a

26   client/matter basis and on an individual biller basis.  We are able to export the billing information

27   and provide to the client for a particular client/matter number.  For this matter, we submit our bills

28   to Google in electronic format in the form of a LEDES file.  LEDES stands for "Legal Electronic

- 1 -

Data Exchange Standard" and is a set of file format specifications intended to standardize bill/invoice data transmitted electronically from a law firm to a corporate client. For purposes of reimbursement in this litigation, we have exported the financial data within our database system. That data is kept secure in the ordinary course of business. At Exhibit A, I am attaching a true and correct copy of an export of the financial data, isolating the attorney time entries directly related to spoliation issues. We have redacted the biller's narrative from the time entries because we do not want to waive any attorney/client privileges. If the Court wishes, an un-redacted export with the narrative can be submitted for *in camera* inspection. Within this declaration, however, we have provided a detailed summary of the tasks performed on an attorney-by-attorney basis, and separately, a detailed chronology of the stages of activity the team performed in investigating and seeking remedies on spoliation. In addition, for each time entry in the export of our attorney's fees data at Exhibit A, we identify the type of activity associated with each entry.

4. For certain entries, the narrative indicated both spoliation and non-spoliation related tasks for the amount of time billed. To avoid any dispute, we have elected to exclude those time entries from the calculation for reimbursement, even though part of the entry related to spoliation. With respect to the Joshua Jarvis preparation and deposition, we have apportioned 50% of the time entries for reimbursement. Even though the reason for taking the Joshua Jarvis deposition was for spoliation (i.e., but for our spoliation case, we would likely not have taken the Jarvis deposition), and the majority of the time in preparation for the Jarvis deposition was regarding or related to the spoliation issue, we have elected to be conservative in our apportionment and are seeking half of the attorney's fees for reimbursement. These entries addressed in this paragraph are specifically identified in the export of our attorney's fees data at Exhibit A.

5. Given my experience practicing intellectual property litigation, I am generally familiar with the standard billing rates among national law firms, particularly for intellectual property litigation services. The billing rates enumerated herein are consistent with the market rate for intellectual property litigation services in various locations in the United States. I have attached hereto as Exhibit B a true and correct copy of relevant portions of the American Intellectual Property Law Association's ("AIPLA") 2013 Report of the Economic Survey, which features the

- 2 -

results of a survey of attorney's fees.  Every other year, the AIPLA produces an Economic Survey that reports on, among other things, individual billing rates for intellectual property services.  The Median billing rate in 2012 for law firm partners in San Francisco is $680/hr (with the 25% Quartile at $500/hr and the 75% Quartile at $825/hr).  The Median billing rate in 2012 for law firm partners in Washington D.C. is $485/hr (with the 25% Quartile at $375/hr and the 75% Quartile at $590/hr).  The Median billing rate in 2012 for law firm associates in San Francisco is $513/hr (with the 25% Quartile at $321/hr and the 75% Quartile at $576/hr).  The Median billing rate in 2012 for law firm associates in Los Angeles is $395/hr (with the 25% Quartile at $255/hr and the 75% Quartile at $503/hr).  The Median billing rate in 2012 for law firm associates in Washington D.C. is $340/hr (with the 25% Quartile at $285/hr and the 75% Quartile at $450/hr).  The Median billing rate in 2012 for law firm associates in New York City is $407/hr (with the 25% Quartile at $315/hr and the 75% Quartile at $568/hr).

6.      In investigation and resolution of the spoliation issue, I have spent a total of 116 hours, for a total of **$78,156.79** in attorney's fees.  I prepared and coordinated the planning for our substantive investigation and for our seeking of remedies relating to spoliation.  I worked with our associates to implement a fulsome discovery strategy, including through document production, depositions, discovery requests, and third party subpoenas.  I prepared for and conducted the depositions of Jake Drew and Joshua Jarvis.  I conducted meetings with the client and team members to address strategic plans and goals.  I outlined, revised, and finalized the briefing related to our motion for sanctions.  I prepared for and attended the Hearing before the Court on this spoliation issue.

7.      In addition to working on this matter's spoliation issue myself, I have supervised the work of associates and paralegals, and have worked with another partner during strategic sessions regarding the investigation and pursuit of remedies relating to spoliation.

8.      Mr. Matthew Wolf  is a partner in the Washington D.C. office of Arnold & Porter LLP.  Mr. Wolf is the lead trial counsel for this litigation.  Mr. Wolf is a 1994 graduate of the University of Virginia School of Law.  He has approximately 19 years of intellectual property litigation experience and is admitted to practice in the District of Columbia.  Mr. Wolf's billing

- 3 -

rates for this matter are as follows: $701/hour in 2012 and $734/hour in 2013 & 2014.  Mr. Wolf's

billing rates for this matter are discounted from his standard rates.  Mr. Wolf's rate for this matter is

consistent with the market rate for intellectual property litigation services at his level of experience.

9.      In investigation and resolution of the spoliation issue, Mr. Wolf spent a total of 22.5

hours, for a total of **$15,976.17** in attorney's fees.  As a partner on this litigation, Mr. Wolf provided

strategic input on a range of issues from discovery and deposition preparation to our arguments in

briefs and the development of our theories in light of factual development and case law analysis

from the associates.  Mr. Wolf had input on strategic decisions for the case on conference calls with

team members.

10.      Ms. Sara Zogg is an associate in the Washington D.C. office of Arnold & Porter

LLP.  Ms. Zogg is a 2004 graduate of Case Western Reserve University School of Law.  She has

approximately 9 years of intellectual property and complex litigation experience and is admitted to

practice in the District of Columbia.  Ms. Zogg's billing rates for this matter are as follows:

$491/hour in 2012 and $516/hour in 2013 & 2014.  Her billing rates for this matter are discounted

from her standard rates.  Ms. Zogg's rate for this matter is consistent with the market rate for

intellectual property litigation services at her level of experience.

11.      In investigation and resolution of the spoliation issue, Ms. Zogg spent a total of

141.25 hours, for a total of **$72,934.26** in attorney's fees.  Ms. Zogg is a senior associate on this

matter that has taken an important role on the substantive aspects of this case, including spoliation.

Ms. Zogg prepared initial depositions outlines for Jake Drew and Joshua Jarvis.  She was involved

in the research related to the initial contact between Mr. Drew and Google's Texas counsel.  Ms.

Zogg assisted in the drafting and revising of the opening and reply briefs for the motion for

sanctions.  Ms. Zogg also assisted in the implementation of the discovery strategy.  Ms. Zogg

played a role in case management, including by supervising mid-level associates with various legal

research and case development tasks relating to spoliation.  Ms. Zogg also assisted me prepare for

the Hearing on spoliation.

12.      Mr. Nicholas Nowak was an senior associate in the Washington D.C. office of

Arnold & Porter LLP.  Mr. Nowak is a 2002 graduate of Boston College School of Law.  Mr.

1   Nowak has approximately 10 years of intellectual property litigation experience and is admitted to

2   practice in the District of Columbia.  Mr. Nowak's billing rate for this matter was $499/hour.  The

3   billing rate for this matter is discounted from the standard rate.  Mr. Nowak's rate for this matter is

4   consistent with the market rate for intellectual property litigation services at his level of experience.

5           13.     In investigation and resolution of the spoliation issue, Mr. Nowak spent a total of

6   48.4 hours, for a total of **$24,175.24** in attorney's fees.  Mr. Nowak helped our team at the senior

7   associate level to advance the implementation of discovery requests, including requests for

8   depositions, supplementation of discovery responses, and requests for the production of documents

9   related to spoliation.  During discovery disputes, Mr. Nowak conducted meet and confers and

10  drafted correspondence with opposing counsel relating to spoliation.  Mr. Nowak helped revise

11  discovery requests and manage mid-level associate tasks relating to discovery.  Mr. Nowak also

12  assisted with revising the initial draft of the opening brief for the motion for sanctions,

13  implementing comments from local counsel and partners.

14          14.     Mr. Ryan Nishimoto is an associate in the Los Angeles office of Arnold & Porter

15  LLP.  Mr. Nishimoto is a 2004 graduate of Boston College School of Law, and has his

16  undergraduate degree in Mathematics from Pepperdine University.  Mr. Nishimoto has

17  approximately 9 years of intellectual property and complex commercial litigation experience and is

18  a member in good standing with the California State Bar.  Mr. Nishimoto's billing rate for this

19  matter is $516/hour.  His billing rate for this matter is discounted from his standard rate.  Mr.

20  Nishimoto's rate for this matter is consistent with the market rate for intellectual property litigation

21  services at his level of experience.

22          15.     In investigation and resolution of the spoliation issue, Mr. Nishimoto spent a total of

23  39.6 hours, for a total of **$20,418.99** in attorney's fees.  Mr. Nishimoto replaced the role of Mr.

24  Nowak on this litigation when Mr. Nowak left the firm.  Mr. Nishimoto helped our team at the

25  senior associate level to advance the implementation of discovery requests, including by preparing

26  interrogatories, requests for production, and third-party requests related to spoliation.  Mr.

27  Nishimoto helped manage mid-level associate tasks relating to discovery.  During discovery

28

- 5 -

BERTA DECL. RE COURT'S ORDER RE SANCTIONS
Case No. 13-cv-01317

disputes, Mr. Nishimoto conducted meet and confers and drafted correspondence with opposing counsel relating to spoliation.

16.     Mr. Maxwell Preston is an associate in the New York office of Arnold & Porter LLP. Mr. Preston is a 2009 graduate of New York University School of Law, and has his undergraduate degree in Computer Science from Duke University.  Mr. Preston has approximately 4 years of intellectual property and general litigation experience and is a member in good standing with the New York State Bar.  Mr. Preston's billing rates for this matter are as follows: $396/hour in 2012 and $454/hour in 2013 & 2014.  His billing rates for this matter are discounted from his standard rates.  Mr. Preston's rate for this matter is consistent with the market rate for intellectual property litigation services at his level of experience.

17.     In investigation and resolution of the spoliation issue, Mr. Preston spent a total of 61.7 hours, for a total of **$27,257.27** in attorney's fees.  Mr. Preston performed numerous legal research tasks in advance of deposition preparation, initial drafting of briefs, and for case strategy discussions on remedies for spoliation.  Mr. Preston implemented case law support and analysis into the briefs in support of the motion for sanctions.  Mr. Preston assisted with the administrative motions to seal and assisted with the preparation of declarations for the briefing.  Mr. Preston also assisted with discovery requests and the drafting of subpoenas, and analyzed the privilege log for entries related to spoliation.

18.     Mr. Aarash Haghighat is an associate in the Washington D.C. office of Arnold & Porter LLP.  Mr. Haghighat is a 2009 graduate of Columbia Law School, and has his undergraduate degree in Engineering from Duke University.  Mr. Haghighat has approximately 4 years of litigation experience and is a member in good standing with the New York State Bar.  Mr. Haghighat's billing rates for this matter are as follows: $367/hour in 2012 and $425/hour in 2013 & 2014.  His billing rates for this matter are discounted from his standard rates.  Mr. Haghighat's rate for this matter is consistent with the market rate for intellectual property litigation services at his level of experience.

19.     In investigation and resolution of the spoliation issue, Mr. Haghighat spent a total of 70.65 hours, for a total of **$26,980.14** in attorney's fees.  Mr. Haghighat worked on the deposition

BERTA DECL. RE COURT'S ORDER RE SANCTIONS
Case No. 13-cv-01317

1    outline for the Joshua Jarvis deposition and performed numerous factual research tasks in advance

2    of this.  He also assisted on the Jake Drew deposition.  Mr. Haghighat reviewed the factual record

3    and drafted facts sections of the briefs in support of the motion for sanctions.  Mr. Haghighat also

4    provided legal research assistance for our briefs.  Mr. Haghighat also advised on discovery follow-

5    up in light of the factual record.

6           20.    Mr. Nicholas Lee is an associate in the Los Angeles office of Arnold & Porter LLP.

7    Mr. Lee is a 2008 graduate of Loyola University Chicago School of Law, and has his undergraduate

8    degree in Computer Science and Engineering from the University of California, Los Angeles.  Mr.

9    Lee has approximately 5 years of intellectual property litigation experience and is a member in good

10   standing with the California State Bar.  Mr. Lee's billing rates for this matter are as follows:

11   $404/hour in 2012 and $458/hour in 2013 & 2014.  His billing rates for this matter are discounted

12   from his standard rates.  Mr. Lee's rate for this matter is consistent with the market rate for

13   intellectual property litigation services at his level of experience.

14          21.    In investigation and resolution of the spoliation issue, Mr. Lee spent a total of 8.7

15   hours, for a total of **$3,774.41** in attorney's fees.  Mr. Lee has an overall substantive knowledge of

16   the case and supported the team in various spoliation tasks as needed.  He was involved in the

17   research related to the initial contact by Mr. Drew.  He supported the team by drafting discovery

18   requests and subpoenas, and by drafting sections of the briefs in support of the motion for sanctions.

19   Mr. Lee also provided assistance during deposition preparation, including by identifying relevant

20   exhibits for the spoliation-related depositions.  Mr. Lee also helped the team with legal research.

21          22.    Mr. John Fitzpatrick is a senior paralegal in the Los Angeles office of Arnold &

22   Porter LLP.  He has a Bachelor's degree from California State University at Fullerton.  Mr.

23   Fitzpatrick has approximately 25 years of experience working as a paralegal in intellectual property

24   and complex commercial litigation matters.  His billing rates for this matter are as follows:

25   $248/hour in 2012 and $260/hour in 2013 & 2014.  Mr. Fitzpatrick's rate for this matter is

26   consistent with the market rate for intellectual property litigation services at his level of experience.

27          23.    In investigation and resolution of the spoliation issue, Mr. Fitzpatrick spent a total of

28   7.5 hours, for a total of **$1,958.17** in billables.  Mr. Fitzpatrick prepared exhibits for depositions and

- 7 -

attorney review.  Mr. Fitzpatrick preformed various tasks in advance of filings, including reviewing and revising motions to seal, attorney declarations, exhibits to briefing, as well as providing copies to chambers.  Mr. Fitzpatrick also assisted with notices to the Court and to opposing counsel.  Mr. Fitzpatrick further assisted me prepare for the Hearing on spoliation.

24.     In addition, our firm on behalf of Google incurred **$7,666.85** in costs relating to Google's spoliation-related discovery and motions practice.  These costs include the following: (a) messenger services for lodging sealed copies of our spoliation briefs and exhibits with the Court; (b) Westlaw database research services; (c) travel expenses, including airfare, hotel, travel meals, and parking relating to the depositions for Jack Drew and Joshua Jarvis, as well as the Hearing on spoliation; and (d) court reporting services for depositions.  At Exhibit C, I am attaching a true and correct copy of an export from our financial database showing the costs data related to spoliation.  At Exhibit D, I am also attaching true and correct copies of the invoices relating to messenger services for lodging sealed copies of the motion for sanctions with the Court.  These costs in Exhibit D were not captured by our export from our financial database.  In sum, we have apportioned the costs so that they are directed specifically to spoliation issues.  These costs are correctly stated, and were necessarily incurred for our spoliation case.

25.     After Mr. Drew made initial contact with counsel for Google in Texas, we determined that to protect Mr. Drew and Google from any inadvertent breaks of privilege, Mr. Drew should have the option to be advised by independent counsel.  Google agreed to pay for independent counsel Andy Tindel from the MT2 Law Group to represent Jake Drew.  I have reviewed the invoice from Mr. Tindel, which totaled **$36,643.75** in attorney's fees and **$347.59** in costs.  I have confirmed that the attorney's fees and costs relate directly to the spoliation issue and the representation of Mr. Drew necessitated by his coming forward.  Mr. Tindel has charged time to counseling Jake Drew and addressing his concerns in the context of the spoliation claims in the litigation.  Mr. Tindel further charged time in connection with his representation of Jake Drew during the preparation and defense of his deposition in this matter.  For example, Mr. Tindel charged for the following activities during the following time frames:

BERTA DECL. RE COURT'S ORDER RE SANCTIONS
Case No. 13-cv-01317

- May 16, 2012 through June 7, 2012: Initial conferences regarding representation of Mr. Drew and initial overview of issues related to spoliation issue.
- June 8, 2012 through August 1, 2012: Investigation into documents and issues regarding spoliation issue raised by Mr. Drew and scheduling of potential deposition or declaration.
- August 6, 2012 through September 19, 2012: Handling issues related to deposition subpoena from Google, and handling subpoena and correspondence from PersonalWeb regarding documents and issues regarding Mr. Drew, including meeting with Mr. Drew regarding document subpoena responses and production.
- September 20, 2012 through September 25, 2012: Representing Mr. Drew at his deposition and for deposition corrections.

Mr. Tindel's costs included travel expenses and meals, as well as photocopy expenses.  The narratives from Mr. Tindel's time entries are redacted so as not to waive any attorney/client privileges.  Mr. Tindel's redacted invoice is attached at Exhibit E.  If the Court wishes, an un-redacted invoice can be submitted for *in camera* inspection.

26.     Before the transfer of this litigation from the Eastern District of Texas to the Northern District of California, Google retained local counsel Potter Minton, a law firm in Tyler, Texas.  Potter Minton advised us and Google on the strategies and issues relating to spoliation claims in the local venue.  I have reviewed the invoice from Potter Minton, which totaled **$1,960.00** in attorney's fees, and have confirmed that the attorney's fees relate directly to spoliation issues. We have redacted the narratives for the time entries because we do not want to waive any attorney/client privileges.  Potter Minton's redacted invoice is attached at Exhibit F.  If the Court wishes, we can submit an un-redacted invoice for *in camera* inspection.

27.     The total amount that Google requests for the reimbursement of its spoliation-related discovery and motions practice is a total amount of **$273,591.43** in fees (based on a total of 521 hours) and **$44,658.19** in total costs, which include our costs of Mr. Tindel's representation of Mr. Drew.  Google diligently and efficiently pursued an investigation into spoliation, corroboration, and remedies specifically after Google obtained deposition testimony regarding the destruction of evidence by PersonalWeb.  In my experience litigating patent litigation cases, the time spent was

- 9 -

reasonable and efficient particularly given the fact-intensive inquiry involved and the discovery struggles between the parties over the sensitive issue of PersonalWeb's spoliation. *See, e.g., Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*, No. 07-cv-0894, WL 2010 WL 1687788, *1-2 (S.D. Cal April 26, 2010) (awarding $236,815.50 in reasonable attorneys' fees and $7,354.32 in costs for the reimbursement of fees and costs associated with the filing of motions for sanctions and deposition discovery in a case involving spoliation).

**Stages of Activities Performed By Team Members In Advance of Our Spoliation Claims**

28.     The pursuit of our spoliation case started with the initial contact by Jake Drew. Contemporaneous with Mr. Drew's contact, our team conducted factual research and reviewed the legal issues concerning discussions with former employees of opposing parties. Our team also conducted research on the remedies and standards applicable to spoliation. Our team discussed strategy in advance of contact and prepared work product for same. In Exhibit A, time entries related to this activity are labeled "initial Jake Drew contact".

29.     The next stage relating to spoliation was the deposition of Jake Drew. Our team would not have taken the deposition of Jake Drew but for our inquiry into the allegations of PersonalWeb's spoliation, as he was a former employee. The entirety of the Drew deposition related to the issue of spoliation. In advance of the deposition, our team reviewed documents, prepared deposition outlines, and conducted strategy calls among team members and the client. Further, our team prepared materials for purposes of marking exhibits at the deposition. The team served the subpoena and coordinated the scheduling of the deposition. In Exhibit A, time entries related to this activity are labeled "deposition of Jake Drew".

30.     The next stage was preparing the initial draft of the motion for sanctions. Our team prepared an outline of the theories, researched the pertinent case law, and gathered the factual evidence to date, including from the Drew deposition. The team met to discuss strategy for the motion and for further discovery in advance of the motion. The initial outlining and drafting of the brief helped the team to refine its case theories and move forward with follow up discovery items. In Exhibit A, time entries related to this activity are labeled "initial drafting of motion".

- 10 -

BERTA DECL. RE COURT'S ORDER RE SANCTIONS
Case No. 13-cv-01317

31.     Subsequent to the Drew deposition and our initial drafting of the motion, we determined that we would pursue substantiation of Mr. Drew's testimony.  Our team sought from opposing counsel further documentation and propounded additional discovery requests.  The team reviewed the production of documents and discovery responses for possible depositions and follow up.  The team met and conferred with opposing counsel in advance of defining the scope of discovery.  In Exhibit A, time entries related to this activity are labeled "discovery follow up after Drew deposition".

32.     Our team next prepared and took the deposition of Joshua Jarvis.  Our team would not have taken the deposition of Joshua Jarvis but for our inquiry into our allegations of PersonalWeb's spoliation.  In advance of the deposition, our team reviewed documentation and prepared deposition outlines, coordinated the notice and scheduling of the deposition, and conducted strategy calls among team members and the client.  The vast majority of our preparation work for the Jarvis deposition concerned our spoliation allegations.  The majority of the Jarvis deposition concerned the issue of spoliation.  Since we had an opportunity to depose Mr. Jarvis, our team took advantage of that opportunity and inquired into other issues not related to spoliation.  As explained above in detail, we have elected to apportion 50% of the attorney's fees for this activity in the calculation for reimbursement.  In Exhibit A, time entries related to this activity are labeled "deposition of Joshua Jarvis".

33.     After our team conducted the deposition of Josh Jarvis, we sought follow up discovery regarding spoliation.  Our team prepared and served requests for production, and then met and conferred with opposing counsel regarding its productions and discovery responses.  The team researched grounds for compelling discovery in light of responses from opposing counsel.  We conducted legal research on spoliation standards to inform discovery requests.  We conducted third parties discovery for factual information relating to spoliation, and then followed up with third parties on their responses.  The team analyzed PersonalWeb's privilege log for spoliation related entries and met and conferred regarding the same.  In Exhibit A, time entries related to this activity are labeled "discovery follow up after Jarvis deposition".

34.     The next stage was drafting and revising the opening brief for the motion for sanctions.  Our team drafted arguments in light of reviews of the depositions transcripts of Messrs. Drew and Jarvis, and drafted sections after reviews of the factual evidence from follow-up document productions and discovery responses.  Further, the team revised arguments in light of strategic discussions with team members and the client.  In Exhibit A, time entries related to this activity are labeled "drafting and revising opening brief".

35.     In advance of filing the motion for sanctions, our team finalized the motion with case cites, factual cites, a declaration in support, a motion to seal, and exhibits for the brief.  The team incorporated comments from the client and senior attorneys.  The associates with paralegal assistance coordinated the filing logistics and any ancillary materials in accordance with the local rules.  In Exhibit A, time entries related to this activity are labeled "submission of motion".

36.     In advance of Google's reply papers, our team reviewed PersonalWeb's opposition, conducted legal research, and analyzed the factual evidence and the declaration provided by PersonalWeb.  The team then drafted, discussed, and finalized the reply briefing, then prepared materials for filing, and coordinated filing logistics.  In Exhibit A, time entries related to this activity are labeled "preparation and submission of reply brief".

37.     For the Hearing before the Court, our team prepared materials in advance of it.  The team reviewed factual evidence, case law support, discovery responses, and the briefing in order to address questions from the Court during oral argument.  The team prepared work product summaries and outlines for reliance in advance and during oral argument.  In Exhibit A, time entries related to this activity are labeled "preparation and attendance at Hearing".

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on February 20, 2014 in San Francisco, California.

Dated:  February 20, 2014            By:  */s/ Michael A. Berta*
                                          Michael A. Berta (SBN 194650)
                                          Three Embarcadero Center, 10th Floor
                                          San Francisco, CA 94111
                                          Phone: (415) 471-3100
                                          Fax: (415) 471-3400
                                          michael.berta@aporter.com