*E-Filed: August 19, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br>v.<br>GOOGLE INC. and YOUTUBE, LLC,<br><br>Defendants. | No. C13-01317 EJD (HRL)<br><br>**ORDER AWARDING MONETARY SANCTIONS**<br><br>**[Re: Docket No. 268]** |

In this patent infringement case, the Court previously found that Plaintiff PersonalWeb engaged in spoliation by failing to timely implement a litigation hold when it reasonably foresaw litigation, which resulted in at least one PersonalWeb employee intentionally deleting hundreds of potentially relevant emails that would have otherwise have been preserved. *See* Order Granting in Part Def.'s Mot. Sanctions ("Order"), Dkt. No. 267. Although Google had requested harsher sanctions, namely dismissal, adverse inference, issue preclusion, and evidentiary sanctions, the Court awarded Google only "monetary sanctions sufficient to reimburse it for reasonable attorney's fees and costs associated with its spoliation-related discovery and motions practice." Order at 7. Pursuant to the Order, counsel for Google provided a declaration with supporting documentation describing Google's spoliation related expenses. *See* Decl. Michael A. Berta Resp. Order ("Berta Decl."), Dkt. No. 268. PersonalWeb filed a response challenging the reasonableness of certain expenses and the detail of the supporting information on the whole. *See* PesronalWeb's Resp. to

Berta Decl., Dkt. No. 274-3. Google offered, and the Court subsequently ordered it, to submit additional information for *in camera* review. Considering both parties' submissions, the Court awards Google monetary sanctions in the amount of $123,934.09.

## LEGAL STANDARD

"District courts must calculate awards for attorneys' fees using the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). "The 'lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210. "Those hours may be reduced by the court where the documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.* "[I]n cases where a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request. Rather . . . when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Id.* at 1399 (citations omitted).

In determining what constitutes a reasonable fee, the court should take into account the relevant factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975). *McGrath v. Cnty. of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995). The twelve *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 252. Although the lodestar is presumptively reasonable, it may be adjusted based on *Kerr* factors not previously considered in its calculation. *Id.* "The district court has a great deal

of discretion in determining the reasonableness of the fee . . . ." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

## DISCUSSION

As an initial matter, PersonalWeb objects that Google's supporting documentation is insufficiently specific to comply with the order, which required Google to "describe each item with sufficient particularity so as to allow the Court to make a determination that it was reasonable and exclusive to the issue of spoliation." Upon *in camera* review of the unredacted materials, which include a "biller's narrative" for each entry, it is clear that the overwhelming majority of entries for which Google is requesting reimbursement relate exclusively to the issue of spoliation. It is impossible, though, through no fault of Google, to determine the reasonableness of each individual entry in isolation. Rather, the Court will assess the reasonableness of the hours spent on the broader categories of activities or stages identified by Google: (1) initial Jake Drew contact; (2) deposition of Jake Drew; (3) initial drafting of motion; (4) discovery follow up after Drew deposition; (5) deposition of Joshua Jarvis; (6) discovery follow up after Jarvis deposition; (7) drafting and revising opening brief; (8) submission of motion; (9) preparation and submission of reply brief; and (10) preparation and attendance at Hearing.

A. Reasonableness of Hours

1. Initial Jake Drew Contact

Google's pursuit of the spoliation issue began when it was initially contacted by former PersonalWeb employee Jake Drew, who indicated that PersonalWeb may have engaged in a mass destruction of discovery materials prior to trial. Google generally describes this stage as conducting factual and legal research related to spoliation and strategizing about how to proceed in light of Drew's allegations. PersonalWeb scoffs that Google could have reasonably spent $7,594.57 in fees with more than a week's worth of billing for "initial Jake Drew contact." However, in view of the rather extraordinary circumstances presented by Drew's initial contact, and having reviewed the narratives for the entries, the Court thinks that these hours spent were reasonable.

3

### 2. Deposition of Jake Drew

PersonalWeb objects to the fees associated with the deposition of Jake Drew because the entries may relate to Google's contemporaneous hunt for evidence to support its motion to transfer, in view of the fact that Google sought leave to file a supplemental brief in support of its motion to transfer based largely on testimony from Drew's deposition. However, the Court is convinced that the entries for which Google seeks reimbursement at this stage were only incidentally related to a motion to transfer, if at all. In other words, the expenses were caused by the spoliation issue and would have occurred regardless of any subsequent motion to transfer. Accordingly, the Court finds these expenses reasonable.

### 3. Initial Drafting of Motion

PersonalWeb argues that Google should not be reimbursed for the $53,819.31 for the initial drafting of the motion during the fall of 2012 as it did not even file the motion until fall 2013, and it is not entitled to recover for efforts it strategically abandoned while this case was before the Texas Court. The Court agrees with PersonalWeb to some extent as much of the research and writing related to spoliation in Texas would not have been applicable to the motion it ultimately brought in California. For example, an early entry in the "drafting and revising opening brief" category a year later describes researching "law regarding spoliation in California." At the same time, waiting a year between drafting the motions would necessarily lead to additional review and duplication of effort. Accordingly, the Court finds that only fifty percent of the hours spent related to "initial drafting of the motion" are reasonable.

### 4. Discovery Follow Up After Drew Deposition

PersonalWeb asserts that Google's initial drafting of the motion indicates that its subsequent discovery was unnecessary. The Court disagrees and finds that these activities are generally reasonable.

### 5. Deposition of Joshua Jarvis

Google asserts that it conservatively estimated that only fifty percent of expenses associated with the Jarvis deposition were related to spoliation. However, PersonalWeb notes that the first question related to document retention does not appear in the transcript until page 163 of 207 pages;

4

thus, Google is entitled to be reimbursed for no more than one quarter of Jarvis deposition related expenses. Google maintains that previous questions were also relevant so spoliation; for example, determining his job responsibilities was relevant to determining the scope of relevance of destroyed documents. However, it seems likely that such a question would have been asked regardless of the spoliation inquiry. The Court thinks that PersonalWeb's logic is fair and finds that only twenty-five percent of hours in this category are reasonable and exclusively related to spoliation.

      6. Discovery Follow Up After Jarvis Deposition

PersonalWeb is "baffled" by Google's claim that it reasonably expended $43,046.85 in fees related to "discovery follow up after Jarvis deposition" considering that the parties' discovery activity was limited to only a few exchanges during that time. However, from reviewing the individual entries, the Court cannot say that the activities seem unreasonable. Thus, for purposes of the initial lodestar calculation, the Court deems them reasonable.

      7. Motion for Sanctions

PersonalWeb does not challenge the reasonableness of the hours in categories 7-10 related to the drafting and submission of the motion for sanctions, the reply, and the hearing. Thus, at this stage, the Court deems them reasonable.

  B. Reasonable Hourly Rate

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (internal quotation marks omitted)). Google seeks attorney's fees for eight attorneys with different geographic locations, levels of experience, and hourly rates. In support of Google's assertion that its attorneys' rates are reasonable, it attached an excerpt from the American Intellectual Property Law Association's 2013 Report of the Economic Survey, which indicates the average billing rates of partners and associates who practice intellectual property, broken down by geographic region. For the most part, the attorneys charge a rate within the reported average to seventy-fifth percentile range for their respective locations considering their experience, and they all charge about the average rate for San Francisco. PersonalWeb does not

5

1 object to the reasonableness of the rates. Accordingly, the Court finds them reasonableLodestar
2 Adjustment

3     The lodestar may be adjusted based on *Kerr* factors not previously considered in its
4 calculation. Here, the Court is primarily concerned with the eighth factor, "results obtained." In its
5 motion for sanctions, Google sought three tiers of sanctions/relief: (1) dismissal of the action;
6 alternatively, (2) adverse inference, issue preclusion, and evidentiary sanctions; and in any case, (3)
7 monetary sanctions. The Court found that dismissal was "certainly not warranted" and denied
8 Google's alternative bid for substantive sanctions because it "suffered little or no substantive
9 prejudice." Order at 7. The Court awarded only monetary sanctions to serve the dual purposes of
10 punishment and compensation. However, the Court has no intention of rewarding Google for its
11 dogged pursuit of dismissal where such relief was unrealistic, and it seems that much of the nearly
12 $300,000 in attorney's fees was unreasonably spent toward that end. Moreover, $300,000 in
13 monetary sanctions is not commensurate with PersonalWeb's culpability or Google's prejudice as
14 discussed in the Order. Thus, to factor in the results obtained relative to the sanctions pursued, the
15 Court will adjust the lodestar downward by fifty percent.

16   C. Costs

17     Google also seeks costs incurred by Google's counsel related to spoliation, namely
18 $7,666.85 for messenger services, Westlaw database research services, travel expenses, and court
19 reporting services. PersonalWeb opposes certain cost entries related to bringing Drew to the
20 January hearing, as well as those related to multiple issues, e.g. spoliation hearings and unrelated
21 depositions of Google employees. The Court agrees and will deduct those entries from the total
22 award of sanctions.

23     Google also seeks reimbursement, as a cost related to spoliation, of providing independent
24 counsel for Drew, for a total of $36,643.75 in attorney's fees and $347.59 in costs. Google explains
25 that it "determined that to protect Mr. Drew and Google from any inadvertent breaks of privilege,
26 Mr. Drew should have the option to be advised by independent counsel. Google agreed to pay for
27 independent counsel . . . ." Berta Decl. at 8. PersonalWeb objects to this cost in its entirety as
28 Google was under no obligation to provide Drew with counsel, nothing in the Order suggests that

PersonalWeb is on the hook for such costs, and Google has failed to explain any reason why it should be. The Court agrees. While Google may have found it ultimately beneficial to provide independent counsel for a third party witness, it went above and beyond what was reasonably necessary, and the Court will not require PersonalWeb to compensate Google for its excessive spending.

## CONCLUSION

From a total of $269,673 in requested attorney's fees, the Court deducts $26,909.66 from "initial drafting of motion" and $7,977.01 from "deposition of Joshua Jarvis" for a lodestar of $234,786.61. The Court further adjusts the lodestar downward fifty percent for a total of $117,393.31. The Court also deducts from Google's request of $7,666.85 in costs $1,126.07 for Drew's travel to the January hearing as well as costs which did not exclusively relate to spoliation, for a total of $6,540.78. Google is not reimbursed for costs related to Drew's independent counsel. Accordingly, Google is awarded $123,934.09 in monetary sanctions.

**IT IS SO ORDERED.**

Dated: August 19, 2014

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C13-01317 EJD (HRL)** Notice will be electronically mailed to:

Adam Hockensmith ahockensmith@susmangodfrey.com, jdunaven@susmangodfrey.com

Allen Franklin Gardner allengardner@potterminton.com

Ashley Lauren McMillian amcmillian@susmangodfrey.com

Ashley Lauren Denton McMillian amcmillian@susmangodfrey.com

Davida P Brook dbrook@susmangodfrey.com, eball@susmangodfrey.com

Daymon Jeffrey Rambin jrambin@capshawlaw.com

Elizabeth DeRieux ederieux@capshawlaw.com

Joseph S. Grinstein jgrinstein@susmangodfrey.com, tadkins@susmangodfrey.com

Justin Adatto Nelson jnelson@susmangodfrey.com

Kalpana Srinivasan ksrinivasan@susmangodfrey.com, hdanielson@susmangodfrey.com

Manmeet Walia mwalia@susmangodfrey.com, pwallace@susmangodfrey.com

Marc M. Seltzer mseltzer@susmangodfrey.com

Matthew M. Wolf matthew.wolf@aporter.com, aarash.haghighat@aporter.com

Max Lalon Tribble , Jr mtribble@susmangodfrey.com, tadkins@susmangodfrey.com

Michael A. Berta michael.berta@aporter.com, alaina.austin@aporter.com, john.fitzpatrick@aporter.com, sfcalendar@aporter.com

Michael Anthony Berta michael.berta@aporter.com

Michael Edwin Jones mikejones@potterminton.com, jovallery@potterminton.com

Nicholas Lee nicholas.lee@aporter.com

Nicholas H Lee nicholas.lee@aporter.com, elizabeth.tryon@aporter.com, gloria.turner@aporter.com, john.fitzpatrick@aporter.com, MaryAnne.Donaldson@aporter.com

Ryan J. Casamiquela ryan.casamiquela@aporter.com, jane.rustice@aporter.com, SFCalendar@aporter.com

Sandeep Seth ss@sethlaw.com

Sara Patricia Zogg sara.zogg@aporter.com

Sidney Calvin Capshaw , III ccapshaw@capshawlaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**