*E-Filed: August 19, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>            Plaintiffs,<br>     v.<br><br>GOOGLE INC. and YOUTUBE, LLC,<br><br>            Defendants. | No. C13-01317 EJD (HRL)<br><br>**ORDER RE DDJR #2 – #7**<br><br>**[Re: Docket Nos. 288-293]** |

The opening sentence of the undersigned's Standing Order re: Civil Discovery Disputes states: "The parties and counsel are cautioned not to allow discovery disagreements to drag on unresolved until some important looming deadline forces them into action." Nevertheless, one week after fact discovery closed, the deadline for requesting orders to compel discovery, the parties filed six (6) discovery dispute joint reports ("DDJR"). The Standing Order also requires lead counsel to meet in person "for as long as and as often as is needed to reach full agreement." Here, all six DDJRs are based on a single meet-and-confer, which it appears was more of a token meeting than a good faith attempt to resolve the parties' discovery disputes without judicial intervention, as evidenced by their "final and most reasonable" proposals (required by the Standing Order), which are simply blanket demands for all requested discovery and corresponding denials of the requests in their entirety. Despite the questionable compliance with the undersigned's Standing Order, the Court attempts to resolve each dispute as fairly as circumstances permit.

**BACKGROUND**

PersonalWeb Technologies, LLC ("PersonalWeb") sues Google Inc. and YouTube, LLC (collectively, "Google") alleging that several of its patents are infringed by Google's query-serving system, certain Google infrastructure systems, and YouTube's Content Management system. In DDDJR #2 through #5, PersonalWeb seeks orders compelling Google to produce documents and information related to (#2) revenues and costs savings, (#3) preservation of documents, and (#4) the new version of Blobstore, as well as (#5) to present for deposition a corporate witness on willfulness. In DDJR #6 and #7, Google requests an order compelling PersonalWeb to (#6) supplement various discovery requests related to Google's identified prior art, and (#7) produce a claim chart to demonstrate how PersonalWeb's own product practices the alleged infringed patents.

**DISCUSSION**

A. Discovery Dispute Joint Report #2 – Revenue and Costs Savings

1. Roszak Deposition

PersonalWeb first asserts that the deposition of Google's 30(b)(6) witness for financial topics, Michael Roszak, revealed four categories of purportedly relevant financial information which Google has not produced, including: (1) documents Roszak reviewed in preparation for his deposition which reflected Google's search-related financials, such as profit and loss statements and cost reports; (2) documents reflecting ad-related revenue and costs associated with searches for each Google service that uses Google's Query Serving System; (3) documents reflecting Google AdWords and AdSense financials; and (4) documents reflecting the amount of data center capacity for Google services that use the accused systems. According to PersonalWeb, it specifically requested these missing documents after the deposition. Google purportedly replied that it was looking into it and then asserted that the documents had already been produced; however, it would not respond when asked to identify the documents by their Bates numbers.

According to Google, only one document not previously produced was reviewed by Roszak prior to his deposition – an old email defining a financial term, which was subsequently produced – and all the requested information pertaining to profit and loss statements or cost reports is contained in Exhibits 4-8 and 14-17 to Roszak's deposition.

Additionally, Google asserts that it long ago produced discovery regarding ads-related revenue, despite the fact that it is irrelevant because it bears no relationship to the accused systems. Moreover, Google maintains that PersonalWeb's request for ad-related revenue and costs information related to the "Query Serving System" (a term coined by PersonalWeb) is inapplicable because, as Roszak testified, that term has no meaning within Google's financial information. Furthermore, despite the alleged irrelevance and inapplicability of the request, Google asserts it conducted a reasonable investigation for further responsive documents, and none were located.

Similarly, Google argues that financials for AdWords are irrelevant, yet it produced them anyway. PersonalWeb even marked the documents as exhibits during the deposition, and Roszak confirmed that they reflected AdWords revenues. Roszak further explained that "AdSense" revenues have nothing to do with revenue for ads placed against searches. Google points out that PersonalWeb has made no showing to the contrary, and therefore the information requested here was already produced or not relevant.

Finally, with respect to the data center capacity, Google again asserts that this information was produced prior to and used as exhibits during the Roszak deposition. Thus, it maintains there is nothing to compel.

2. Latency Reductions

PersonalWeb asserts that "Google has failed to produce any documents associated with Google's decision to transition within its Query Serving System over the past five years from a Tokenspace index to a direct index in Mustang and TeraGoogle, including specifically documents associated with any quantification of the latency improvement for search results associated with this transition." PersonalWeb does not believe Google's contention that it has not analyzed how this infrastructure change has benefitted the company. Likewise, Google has not produced documentation of cost savings related to latency reductions, despite its oft stated claim that "every 'millisecond of search latency' costs the company 'about $1 million/year in lost revenue.'"

Google responds that such documents simply do not exist, and PersonalWeb's speculation otherwise does not make it so. Google explains that the transition from a Tokenspace index to a direct index was just a single part of a larger project, and Google does not have additional analyses

of that individual feature beyond that already produced. Additionally, the statement that every millisecond of latency costs $1 million/year is based on an anecdotal email, not any hard data. In fact, Google's 30(b)(6) witness on this issue testified that he is unaware of anything that confirms that anecdotal statement, and that his numerous studies on latency concluded that no correlation exists between small latency changes and revenue – studies which Google produced. Another Google witness provided similar testimony.

3. Blobstore

PersonalWeb asserts that Google will not produce cost data related to the accused system Blobstore, including various categories of information PersonalWeb specifically requested. PersonalWeb argues that Google's position taken at the meet and confer, that such information was irrelevant, is contrary to law – money saved by a company through use of an infringing system is clearly relevant and withholding such information is prejudicial.

Google denies having refused to produce such information; it simply had not finished its production at the time of the meet and confer, which occurred prior to the fact discovery cutoff. Regardless, Google asserts that it did produce available information on the specific categories PersonalWeb requested.

4. Conclusion

PersonalWeb generally requests numerous sub-categories of documents that it asserts Google has not produced. Google generally counters that the requested information was already produced, does not exist, or in some cases, is irrelevant. Google's rebuttal has sufficiently overcome PersonalWeb's generalizations of deficient production. Of course, there may be some responsive documents that have been unintentionally withheld, but the Court thinks that Google's ongoing duty to supplement is a sufficient enforcement mechanism, and an order to compel is not warranted. Accordingly, PersonalWeb's request for relief in DDJR #2 is denied.

B. Discovery Dispute Joint Report #3 – Preservation of Documents

"PersonalWeb seeks an order compelling Defendants to produce immediately Defendants' document retention policies and litigation hold notices issued in this case, or documents and information sufficient to identify the content of Google's litigation hold notices, the dates the

notices were circulated and the recipients of such notices, and what categories of information Google's employees were instructed to preserve and collect." Google asks the Court to deny the request in its entirety.

PersonalWeb bases its request on Interrogatory No. 11, served on August 31, 2012, which requested, among other things, that Google describe its email retention policies as well as any changes made thereto since it received notice of the litigation. Google's supplemental response in November 2012 stated that Google would produce "copies of any document retention policies in effect at the time PersonalWeb filed its Complaint and documents sufficient to identify any subsequent changes to such policies." PersonalWeb asserts that no such documents or information were ever produced or identified. A few months later, PersonalWeb deposed Ms. Zmrhal, the project manager for Google's electronic discovery group. In March 2014, more than one year later, PersonalWeb sent Google an email noting that despite the representations made in its November 2012 supplemental response to Interrogatory No. 11, PersonalWeb had not received any documents identifying changes to its retention policies, including, specifically, documents identifying any litigation holds. Then, at the meet and confer in April, Google asserted, purportedly for the first time, that such information was privileged. PersonalWeb disputes that the information is privileged, citing *In re eBay Seller Antitrust Litigation*, No. C 07-01882 JF (RS), 2007 WL 2852364 (N.D. Cal. Oct. 2, 2007) (hereinafter, "*eBay*").

First, Google argues that even if its initial production were deficient, which it denies, PersonalWeb's more than one-year delay in following up on its discovery request demonstrates a lack of good cause to order further production after the fact discovery cutoff. Additionally, PersonalWeb's current request is broader than the interrogatory on which it is purportedly based, which notably makes no mention of litigation hold notices. As for what was actually requested, contrary to PersonalWeb's assertions, Google did produce its relevant document retention policy. PersonalWeb had the policy and even inquired about it during the deposition of Zmrhal, who testified that the same retention policy had been in place for at least five or six years. Google also opposes PersonalWeb's request because it is not relevant to any issue in this case, and the litigation hold notices are protected by attorney-client privilege, as acknowledged in *eBay*, the only case

1 PersonalWeb cites. Lastly, Google notes that PersonalWeb's decision to produce its own litigation
2 hold notice in an unsuccessful attempt to defend against allegations of spoliation does not justify
3 compelling Google to produce its privileged notice.

4 In the absence of an explanation for the year-long gap in PersonalWeb's discovery efforts
5 towards Google's document retention policies, and the coincidence with the Court's finding that
6 PersonalWeb committed spoliation by failing to timely institute its litigation hold, the Court cannot
7 help but think that the motivation for its renewed interest is retaliatory in nature, as Google implies.
8 Regardless, the Court agrees with Google that the litigation hold notice itself is protected as
9 attorney-client communications and/or work product, as recognized in PersonalWeb's lone cited
10 case, *eBay*. There, the court did allow the plaintiffs to inquire into what the employees did in
11 response to receiving the litigation hold notice, even if that indirectly revealed the contents of
12 notice. However, that case is distinguishable in that it was still very early in discovery, and
13 plaintiffs were about to depose eBay's witness on ESI retention. Moreover, the court based the
14 relevance of the discovery on the commentary to amendment to Rule 26(f) which suggests that early
15 discovery from individuals with special knowledge of a party's ESI may be helpful in appropriate
16 cases. Here, however, after the fact discovery cutoff, the relevance of PersonalWeb's requests for
17 documents related to Google's retention policies and litigation holds is dubious. PersonalWeb does
18 not suggest that the information is relevant to the merits of the case, only that it is responsive to an
19 interrogatory served over a year and a half ago. Even if it is arguably within the scope of discovery,
20 PersonalWeb had ample opportunity to obtain the information during discovery, and the Court
21 thinks the burden of producing the information, however minimal, outweighs its likely benefit. *See*
22 Fed. R. Civ. P. 26(b)(2)(C)(ii)-(iii). Accordingly, PersonalWeb's request for an order to compel is
23 denied.

24     C. Discovery Dispute Joint Report #4 – New Version of Blobstore

25 PersonalWeb seeks an order compelling Google to produce source code and documents
26 related to the newest version of accused instrumentality Blobstore, which version is not itself an
27 accused instrumentality, is still in development, and has not yet gone live. According to
28 PersonalWeb, at a deposition in April 2014, a Google witness testified that Google planned to begin

rolling out the new version "soon, perhaps this quarter," almost certainly before trial, and he confirmed that it would continue to use the accused instrumentality.

According to Google, the deposition testimony explained that the new version will not go live and source code will not be in final release form for another two to three quarters from now, after expert reports and summary judgment proceedings. Moreover, courts find that when a product is still in development, discovery into such material would be premature because an incomplete, non-"live" product cannot be evaluated for infringement in patent litigation. *See EOPS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31, 34 (D.D.C. 2012).

The Court agrees with Google that it need not produce discovery related to a version of a product which has not been released and is still being developed. Accordingly, PersonalWeb's requested relief is denied.

D. Discovery Dispute Joint Report #5 – Witness on Willfulness

PersonalWeb asserts that Google has failed to produce a witness in response to its 30(b)(6) deposition notice on the topic of "Google's decision to cite to any of the Asserted Patents in any other patents originally filed by Google." After Google objected to the scope of the topic, the parties met and conferred, and PersonalWeb agreed to provide Google with a short list of Google patents that cite to the patents-in-suit. PersonalWeb provided the list of nine patents, yet Google has still failed to produce a witness as it maintains that it cannot locate a person with knowledge of the issue.

Since its initial objections to the broad scope of the request and the burden it would impose have been somewhat alleviated by PersonalWeb's narrowing, Google now objects on the grounds that the request seeks privileged information that is irrelevant to the case. Google asserts that the request for information as to the decision why certain prior art was cited directly implicates privileged discussions with, and evaluations by, outside prosecuting attorneys, and thus, the request is outside the scope of the discovery. The Court agrees that as the request is currently framed, it primarily seeks privileged communications, and the Court will not compel Google to produce a witness to testify as to this information. Google further asserts that even if PersonalWeb were to seek more general, nonprivileged information related to the topic of citations of PersonalWeb

7

patents in Google patent applications, it would still be irrelevant to this case because PersonalWeb has not tied any of the nine Google patents in its list to any of the existing accused systems. Here, however, the Court disagrees as information related to Google's citation to PersonalWeb's patents at issue is at least reasonably calculated to lead to the discovery of admissible information. Accordingly, Google shall produce a witness knowledgeable of the general topic of citations to PersonalWeb patents in the nine Google patents identified by PersonalWeb, with the understanding that that person shall not be required to testify regarding privileged communications with attorneys about the decision to cite to PersonalWeb patents.

E. Discovery Dispute Joint Report #6 – Prior Art

Google served three interrogatories asking for information relating to the prior art identified by Google in its Invalidity Contentions, essentially seeking PersonalWeb's "validity contentions." Google maintains that it served two sets of "non-infringement contentions" consisting of 72 pages of claim charts on a limitation-by-limitation basis in response to similar interrogatories from PersonalWeb. However, PersonalWeb has failed to produce reciprocal contentions, instead merely referencing a couple deposition transcripts, the licenses to the patents-in-suit, and the *inter partes* review proceedings.

PersonalWeb's primary objection is that ordering a supplemental response is premature because Google has not yet produced its expert reports. However, at this point, Google has now produced its expert reports. Accordingly, PersonalWeb shall now respond to the interrogatories with its "validity" contentions.

F. Discovery Dispute Joint Report #7 – Claim Chart

Google served an interrogatory asking for a limitation-by-limitation claim chart for PersonalWeb's product StudyPods, which PersonalWeb contends practices the patents-in-suit. However, Google maintains that PersonalWeb failed to provide a substantive response to the interrogatory and failed to provide sufficient discovery on this issue during depositions as well. It is Google's position that if PersonalWeb wants to rely on its StudyPods product as practicing the patents-in-suit, then it must provide contentions in discovery as to how it does so.

PersonalWeb counters that it need not produce a limitation-by-limitation claim chart for StudyPods because it is not using its own product in support of its infringement allegations against Google. "Patent Local Rule 3-1 permits a party to asserting infringement to rely on its own instrumentality <u>to prove that the accused product practices the claimed invention</u>, so long as that party identifies separately for each asserted claim any such instrumentality that incorporates or reflects that particular item." *Adobe Sys. Inc. v. Wowza Media Sys.*, No 11-cv-02243-JST, 2014 WL 709865, at *3 (N.D. Cal. Feb. 23, 2014) (emphasis added by PersonalWeb). Thus, because it is not relying on StudyPods to prove Google's infringement, PersonalWeb maintains that it need not provide claim charts.

However, the text of Patent L.R. 3-1 is not as limiting as PersonalWeb suggests. Rule 3-1(g) provides that a party claiming patent infringement must produce a claim chart if the party wishes "to rely, *for any purpose*, on the assertion that its own . . . instrumentality practices the claimed invention." Moreover, the fact that discovery is not explicitly required by the local rules does not mean that a party is excused from responding to a discovery request. Regardless, PersonalWeb further argues that, contrary to Google's representation, it has already provided sufficient discovery on this issue during depositions, as evidenced by the three pages of deposition transcripts PersonalWeb quotes in its portion of the DDJR, and it produced the StudyPods source code. However, the Court is not convinced that this is an adequate substitute, and PersonalWeb shall provide a full substantive response to Google's interrogatory.

## CONCLUSION

The parties shall produce the aforementioned discovery within fourteen (14) days from the date of this order.

**IT IS SO ORDERED.**

Dated: August 19, 2014

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

9

**C13-01317 EJD (HRL) Notice will be electronically mailed to:**

Adam Hockensmith     ahockensmith@susmangodfrey.com, jdunaven@susmangodfrey.com

Allen Franklin Gardner     allengardner@potterminton.com

Ashley Lauren McMillian     amcmillian@susmangodfrey.com

Ashley Lauren Denton McMillian     amcmillian@susmangodfrey.com

Davida P Brook     dbrook@susmangodfrey.com, eball@susmangodfrey.com

Daymon Jeffrey Rambin     jrambin@capshawlaw.com

Elizabeth DeRieux     ederieux@capshawlaw.com

Joseph S. Grinstein     jgrinstein@susmangodfrey.com, tadkins@susmangodfrey.com

Justin Adatto Nelson     jnelson@susmangodfrey.com

Kalpana Srinivasan     ksrinivasan@susmangodfrey.com, hdanielson@susmangodfrey.com

Marc M. Seltzer     mseltzer@susmangodfrey.com

Matthew M. Wolf     matthew.wolf@aporter.com

Max Lalon Tribble , Jr     mtribble@susmangodfrey.com, tadkins@susmangodfrey.com

Michael A. Berta     michael.berta@aporter.com, alaina.austin@aporter.com, sfcalendar@aporter.com

Michael Anthony Berta     michael.berta@aporter.com

Michael E Jones     mikejones@potterminton.com

Nicholas Lee     nicholas.lee@aporter.com

Nicholas H Lee     nicholas.lee@aporter.com, elizabeth.tryon@aporter.com, gloria.turner@aporter.com, john.fitzpatrick@aporter.com, MaryAnne.Donaldson@aporter.com

Ryan J. Casamiquela     ryan.casamiquela@aporter.com, jane.rustice@aporter.com, SFCalendar@aporter.com

Sandeep Seth     ss@sethlaw.com

Sara Patricia Zogg     sara.zogg@aporter.com

Sidney Calvin Capshaw , III     ccapshaw@capshawlaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**