United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,

Plaintiffs,

v.

GOOGLE INC. and YOUTUBE, LLC,

Defendants.

Case Nos.: 5:13-CV-01317-EJD

**ORDER GRANTING DEFENDANTS' MOTION TO STAY**

[Re: Docket Item No. 303-3]

Presently before the court in this patent infringement action is Defendants Google Inc. and YouTube, LLC's (collectively, "Defendants") Motion to Stay. Def. Mot. to Stay ("Mot. to Stay"), Docket Item No. 303-3. Plaintiffs Personal Web Technologies, LLC and Level 3 Communications, LLC (collectively, "Plaintiffs") oppose this motion. Pl. Opp'n ("Opp'n"), Docket Item No. 309-4. After filing the instant motion, Defendants moved for administrative relief, requesting that the court consider the Motion to Stay without oral argument, and Plaintiffs did not oppose that request; the court granted the administrative motion on August 8, 2014, agreeing to consider the instant motion solely on the papers. Mot. for Admin. Relief, Docket Item No. 311; Notice, Docket Item No. 312; Order Grt'g Mot. for Admin. Relief, Docket Item No. 321. Having now considered the parties' briefing and for the reasons set forth below, the court GRANTS Defendants' Motion to Stay.

United States District Court
For the Northern District of California

## I. BACKGROUND

### a. Case History

The instant matter is one of a suite of twelve patent infringement lawsuits against twenty-one separate defendants originally filed by Plaintiffs in the Eastern District of Texas from December 2011 to September 2012. The cases, which were initially assigned to Judge Leonard Davis, allege that each defendant infringes one or more claims of at least one of eight U.S. patents: U.S. Patent Nos. 5,978,791 ("the '791 patent"), 6,415,280 ("the '280 patent"), 7,945,539 ("the '539 patent"), 7,945,544 ("the '544 patent"), 7,949,662 ("the '662 patent"), 8,001,096 ("the '096 patent"), 6,928,442 ("the '442 patent"), and 7,802,310 ("the '310 patent"). Of these patents, Plaintiffs assert the '791, '280, '442, '310, '662, and '096 patents against Defendants in this case. See Second Am. Compl. ("SAC"), Docket Item No. 261; Mot. to Stay at 4, Dkt. No. 303-3. Defendants, along with the defendants in three additional cases—Facebook, EMC, VMware, and NetApp—moved to transfer their respective actions from the Eastern District of Texas to the Northern District of California. Judge Davis conditionally granted the transfer motions, but retained the cases until completion of the Markman hearing and the issuance of that court's claim construction order. See Mem. Op. and Order Conditionally Grt'g Mot. to Transfer, Docket Item No. 131. Thereafter, on August 5, 2013, the four cases were transferred to this district and assigned to this court. See Order Grt'g Mot. to Transfer, Docket Item No. 179.

While these cases were still pending in the Eastern District of Texas, defendants in the related EMC and VMware cases filed petitions with the United States Patent and Trademark Office ("PTO") requesting inter partes review ("IPR") of six of the patents asserted against them, namely, the '791 patent, the '280 patent, the '544 patent, the '539 patent, the '662 patent, and the '096 patent. See Decl. of Cortney C. Hoecherl ISO Mot. to Stay ("Hoecherl Decl.") Exs. 6, 8-12, Case No. 13-cv-01358, Dkt. No. 8-2. The Patent Trial and Appeal Board ("PTAB") instituted all six IPRs on May 17, 2013. See id. Exs. 13-18. On May 15, 2014 the PTAB issued its final written decisions on these IPRs, finding all twenty-one patent claims at issue to be invalid. See Decl. of Ryan J. Casamiquela ISO Def. Mot. to Stay ("Casamiquela Decl.") Exs. 2-3, Docket Item No. 303-5; Case No. IPR2013-00083, Paper No. 80 (PTAB May 15, 2014); Case No. IPR2013-00085,

Paper No. 73 (PTAB May 15, 2014); Case No. IPR2013-00084, Paper No. 64 (PTAB May 15, 2014); Case No. IPR2013-00086, Paper No. 66 (PTAB May 15, 2014). According to Defendants, six of these twenty-one invalidated claims are asserted against them in the instant action.[1]

More recently, defendants in several of the remaining Eastern District of Texas cases filed IPR petitions concerning claims of several of the same patents involved in the EMC and VMware IPRs, as well as claims of the ’310 patent. See Decl. of Reuben H. Chen ISO Mot. to Stay (“Chen Decl.”) Exs. D-G, Case No. 13-cv-01356, Dkt. No. 29-1. On March 26, 2014, the PTAB instituted defendant Apple’s IPR on claims 24, 32, 70, 81-82, and 86 of the ’310 patent. Casamiquela Decl. Ex. 9, Dkt. No. 303-19. Similarly, on April 15, 2014, the PTAB instituted defendant Rackspace’s IPRs on the following: claims 1-4, 29-33, 35, and 41 of the ’791 patent (Case No. IPR2014-00057, Paper No. 9, (PTAB Apr. 15, 2014)); claims 10, 15-16, 18, 25, 31-33, 36, and 38 of the ’280 patent (Case No. IPR2014-00059, Paper No. 9 (PTAB Apr. 15, 2014)); 1-2, 4, 7, 23, 27-28, and 30 of the ’442 patent (Case No. IPR2014-00066, Paper No. 9 (PTAB Apr. 15, 2014)); and claims 1-2, 5-8, 10-12, 14, 16-19, 24, 29, 32, 70, 81-82, and 86 of the ’310 patent (Case No. IPR2014-00062, Paper No. 9 (PTAB Apr. 15, 2014)). Trial on these claims is expected in November 2014, with final decisions anticipated by mid-April 2015. According to Defendants, thirty-one claims subject to these pending IPRs are asserted against them in the instant action.

Aside from the numerous final and pending IPRs, the instant action also potentially stands to be impacted by a pending arbitration between Plaintiffs and a third party. Mot. to Stay at 5-6, Dkt. No. 303-3; Casamiquela Decl. Ex. 4, Dkt. No. 303-10. That dispute concerns Plaintiffs’ ability to prosecute the patents-in-suit in a particular field-of-use. Id. Defendants contend that Plaintiffs’ infringement contentions in this case are directed at products falling within this disputed exclusive field-of-use and thus within the scope of the arbitration.

---

[1] Defendants maintain that Plaintiffs assert forty-seven claims of the six patents-in-suit against them, but fail to provide the court with relevant documentation from which the court could independently verify these assertions or map them against the pending IPRs. Where pieces of relevant information have been provided, they are presented as exhibits attached to a declaration without any corresponding citations in Defendants’ motion. This lack of comprehensive specificity and support renders the court’s task of determining the impact of the PTAB’s final IPR decisions, the additional pending IPRs, and the ongoing separate arbitration unnecessarily difficult. However, considering that Plaintiffs do not appear to dispute Defendants’ statement that thirty-seven asserted claims are subject to IPRs while ten asserted claims are not, the court presumes the truth of these claims’ statuses as Defendants presents them for purposes of this Order only. See Opp’n at 7, Dkt. No. 309-4.

**United States District Court**
For the Northern District of California

Through the instant motion, Defendants ask the court to stay this case pending final resolution of the relevant third-party IPRs and final resolution of Plaintiffs' pending arbitration. In support of this motion, Defendants contend that thirty-seven of the forty-seven asserted claims are subject to at least one third-party IPR, with six relevant claims already having been invalidated and thirty-one relevant claims presenting substantial questions of validity. Defendants further contend that the ten claims not covered by the various IPRs all stem from the same single common parent application as those claims covered by the pending IPRs. Mot. to Stay at 1, Dkt. No. 303-3. Moreover, according to Defendants, those ten remaining claims will be impacted by Plaintiffs' arbitration. Plaintiffs do not deny the existence of the IPRs or the arbitration, but do dispute Defendants' characterization of those proceedings' impact on this case.

**b. IPR Procedure**

IPR is a relatively new procedure introduced by the Leahy-Smith America Invents Act ("AIA") through which the PTO's Patent Trial and Appeal Board ("PTAB") may review the patentability of one or more claims in a patent. See Pub. L. No. 112–29, § 6(a), 125 Stat. 284, 299–304 (2011), codified at 35 U.S.C. §§ 311–319 (2013). This mechanism replaces the previous inter partes reexamination procedure and converts the process from an examinational to an adjudicative one. See Abbot Labs. v. Cordis Corp., 710 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting H.R. Rep. No. 112-98, pt. 1, at 46-47 (2011)). Under this new procedure, any party other than the patent owner may file a petition to institute IPR in order to establish that the identified claims are invalid under 35 U.S.C. §§ 102 and/or 103. 35 U.S.C. §§ 311(a)-(b). The petitioner must rely "only on…prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). The patent owner may file a preliminary response "setting forth the reasons why no inter partes review should be instituted" within three months of the petition, or may expedite the proceeding by waiving the preliminary response. 37 C.F.R. § 42.107(a)-(b). The PTO must decide whether to institute IPR within three months of the patent owner's preliminary response, or in the event no response is filed, by the last date on which the response could have been filed. 35 U.S.C. § 314(b).

If the PTO institutes IPR, the proceeding is conducted before a panel of three technically-trained Administrative Patent Judges of the newly-formed PTAB. See 35 U.S.C. §§ 6(a)-(c), 311.

The parties are permitted to take limited discovery and respond to each other's arguments; they also have the right to an oral hearing. 35 U.S.C. §§ 316(a). The PTAB must, under most circumstances, issue its final determination within one year of the institution date. 37 C.F.R. § 42.100(c). After receiving a final determination from the PTAB, the parties have the option to appeal to the Federal Circuit. 35 U.S.C. §§ 141(c), 319.

In enacting the AIA, Congress sought "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs" and "to create a timely, cost-effective alternative to litigation." Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48680-01 (Aug. 12, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.). To that end, IPR affords at least three advantages to the parties and the district court in any corollary civil action. First, IPR provides a path to receive expert guidance from the PTO under a more accelerated timeline than the previous inter partes reexamination procedure: petitioners must file for IPR within one year of being served with a patent infringement complaint (35 U.S.C. § 315(b)) and IPR, if instituted, will typically conclude within 18 months of the filing date. In contrast, the average time from filing to conclusion of the previous inter partes reexamination procedure ranged from 28.9 to 41.7 months. See 77 Fed. Reg. 48680-01 at 48721. Second, the decision to institute IPR signals that at least one of the subject claims may be modified or cancelled. See 35 U.S.C. § 314(a) (requiring "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" in order for IPR to be instituted). This new threshold requirement presents a more stringent standard than the previous "substantial new question of patentability" and thus provides some assurance that the delay suffered as a result of IPR will be worthwhile. Third, IPR imposes an estoppel requirement that precludes the petitioner from asserting invalidity during a later civil action "on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). This critical limitation results in a more streamlined litigation and reduces the likelihood of inconsistent judgments.

United States District Court
For the Northern District of California

In fiscal year 2013, the PTO instituted IPR on approximately 82.3% of the petitions it received. See "AIA Progress Statistics," available at www.uspto.gov/ip/boards/bpai/stats/aia_statistics_ 01_02_2014.pdf (last accessed Jan. 10, 2014). Given that this procedure has only been available for a short time, reliable statistics regarding the final outcomes of IPR, e.g. the percentage of claims cancelled or modified, are not yet available.

**II. LEGAL STANDARD**

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). A stay may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." In re Cygnus Telecomms. Tech., LLC Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). In this district, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings," (ASCII Corp. v. STD Entm't USA, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)), though some courts have begun to rethink that policy in recent years (see, e.g., Network Appliance Inc. v. Sun Microsystems Inc., No. 07-cv-06053, 2008 WL 2168917, at *3 (N.D. Cal. May 23, 2008)).

Courts traditionally consider three main factors in determining whether to stay a case pending reexamination: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (citation omitted). "While the case law states several general considerations that are helpful in determining whether to order a stay, ultimately the court must decide stay requests on a case-by-case basis." TPK Touch Solutions, Inc. v. Wintek Electro–Optics Corp., No. 13–cv–2218, 2013 WL 6021324, at *1 (N.D. Cal. Nov. 13, 2013).

**III. DISCUSSION**

**a. Stage of Proceedings**

The first factor requires the court to consider the progress already made in the case. Telemac, 450 F. Supp. 2d at 1111. The early stage of litigation weighs in favor of a stay. See Target Therapeutics, Inc. v. SciMed Life Sys. Inc., 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995). Here, the parties have been litigating this case since its filing in December 2011. The Eastern District of Texas has issued its claim construction order and, following transfer to this court, fact discovery has closed, expert discovery is well underway, and summary judgment briefing is imminent. See Order Grt'g Joint Mtn. & Stip. to Amend Sched. Order, Docket Item No. 302. At the same time, the court has not yet set a trial date or deadlines for pretrial exchanges and submissions, nor will it do so until the parties' pretrial conference on December 5, 2014. Id. Considering these circumstances, this case can certainly not be said to be in its infancy, nor can it be said to have reached the point of no return. See Convergence Techs. (USA), LLC v. Microloops Corp., No. 10-CV-02051-EJD, 2012 WL 1232187, at *4 (N.D. Cal. Apr. 12, 2012). As such, the stage of the proceedings factor is a neutral in this case.

**b. Simplification of Issues**

Next, the court must determine whether a stay will simplify the litigation. Telemac, 450 F. Supp. 2d at 1111. Here Defendants argue that the outcome of two separate categories of proceedings—Plaintiffs' separate arbitration and the numerous third party IPRs—will greatly impact the scope of this case. Plaintiffs deny that the arbitration or the IPRs will affect this case in any significant manner.

Turning first to the question of Plaintiffs' arbitration, the court notes that if the arbitrator finds that the agreement between Plaintiffs and the third party is valid, then Plaintiffs' standing to bring the current action could be questionable. Plaintiffs attempt to avoid this reality by insisting that, notwithstanding the validity of the agreement, the contested field-of-use definitively does not implicate any of Defendants' accused functionalities or products, and thus the arbitration will have no effect on the current action regardless of the outcome. Opp'n at 6, Dkt. No. 309-4. But at this point the court does not share Plaintiffs' confidence in their characterization of the arbitration. The

**United States District Court**
For the Northern District of California

validity of the agreement and the scope of the field-of-use do not appear to have been finally determined; additionally neither the district court nor the arbitrator has considered the challenged agreement as it applies to Plaintiffs' claims against Defendants in this case. Until a final decision on the former issues has been reached by the appropriate adjudicator, this court cannot consider the latter concern. Therefore, it is still possible that the outcome of the arbitration could threaten the very existence of this lawsuit. Under these circumstances, awaiting the decision of the arbitrator seems prudent.

Second, as to the more substantial question of the pending IPRs, Defendants argue that this case stands to be substantially simplified by a stay because the vast majority of claims asserted against them are subject to these PTO proceedings. "[W]aiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims." Target Therapeutics, 33 U.S.P.Q.2d at 2023. Here, the PTAB has already found six claims asserted against Defendants to be invalid. According to Defendants, the thirty-one remaining claims subject to IPR stem from the same family of patents as the already invalidated claims. See Mot. to Stay at 8, Dkt. No. 303-3. Considering these circumstances, the court finds that this case likely stands to be significantly curtailed by the PTAB's anticipated decisions.

Even if the PTAB affirms the validity of every asserted claim, which is highly unlikely given the new higher standard for instituting IPR and the outcome of the initial round of IPRs, these cases would still be simplified by a stay. In that case, the PTAB's decisions would greatly assist in streamlining the presentation of evidence and benefit this court by providing the PTO's expert opinion on the claims remaining in dispute. Indeed, allowing these invalidity arguments to be determined once, employing the specialized expertise of the PTAB, produces the exact results—avoiding duplicative costs and efforts and averting the possibility of inconsistent judgments—intended by the AIA and previous procedures. See 77 Fed. Reg. 48680-01 at 48721; Yodlee, Inc. v. Ablaise Ltd., No. 06-cv-07222, 2009 WL 112857, at *2 (N.D. Cal. Jan. 16, 2009) ("Congress instituted the reexamination process to shift the burden o[f] reexamination of patent validity from the courts to the PTO.") (citation omitted).

In addition, this court has previously explained in similar cases that the benefits of a stay are partially contingent upon the application of the IPR proceeding's estoppel effect. See PersonalWeb Tech., LLC v. Facebook, Inc., No. 13-cv-1356, 2014 WL 116340 (Jan. 13, 2014) (citing 35 U.S.C. § 315(e)(2)). This estoppel prohibits an IPR petitioner from raising invalidity arguments in a subsequent lawsuit that were raised or could have been raised during the IPR. The purpose and effect of this rule is to encourage the petitioner to present its best and most comprehensive invalidity arguments to the PTAB. Such a strategy is supremely appropriate and efficient because, as Congress has recognized, the IPR proceedings produce decisive expert guidance from the PTAB on patent validity issues, a process which a less-specialized district court need not expend the resources to duplicate. See 77 Fed. Reg. 48680-01 at 48721. In cases such as this one, where Defendants are not parties to the pending IPRs, the fact that the patent infringement defendants are not automatically estopped jeopardizes the IPRs' critical intended effects on any subsequent district court action. Indeed, should any claims survive the pending IPRs in this case, the expected efficiencies would be eviscerated should Defendants go on to bring invalidity arguments in this court that were raised or could have been raised before the PTAB. Considering this easily-exploited opportunity, and considering that, at least in this case, Defendants request discretionary relief from this court based not on their own efforts but on the diligent work of third parties, that Defendants had the same opportunity to file IPR petitions as the parties who chose to do so, and that the nature of this particular genre of patent litigation lends itself to coordination with other defendants on the preparation of invalidity arguments,[2] the court will alleviate its serious estoppel concerns by using its inherent power to condition a stay on Defendants' agreement to be bound as if they themselves had filed the relevant IPR petitions. With that condition in place, the court concludes that the potential for streamlining these proceedings by awaiting the final resolution of IPR proceedings weighs heavily in favor of a stay.

[2] Defendants themselves implicitly acknowledge their ability to do so when cooperation stands to benefit them; fearing the potential for collaboration between Plaintiffs and Rackspace, Defendants have pursued one of the many avenues of coordination available by moving to join the pending Rackspace IPRs. Def. Reply ("Reply") at 3, Docket Item No. 310.

United States District Court
For the Northern District of California

**c. Undue Prejudice**

Finally, the court must consider whether the non-moving party will suffer undue prejudice as a result of a stay. See In re Cygnus Telecomm. Tech., 385 F. Supp. 2d at 1023. Plaintiffs contend that a stay would create a significant tactical disadvantage for them. Particularly, Plaintiffs argue that Defendants have known of the pending IPRs for months, and in the case of the completed IPRs, years, but strategically waited to move for a stay until the court had already narrowed this case to claims implicated by those IPRs. Opp'n at 8, Dkt. No. 309-4. Defendants frame the litigation history differently—asserting that they filed the instant motion only one week after the PTAB invalidated the six relevant claims in the EMC and VMWare IPRs and within nearly one month of the PTAB's institution of the newly instituted IPRs. Reply at 2, Dkt. No. 310.

Plaintiffs' argument highlights a potentially strategic maneuver on the part of Defendants; however, Plaintiffs neither acknowledge their own strategic litigation decisions nor explain how Defendants' actions fall outside the bounds of accepted litigation tactics or otherwise result in undue prejudice towards them. As such, the court is not persuaded that Plaintiffs will suffer an undue tactical disadvantage in the event of a stay. Nor does the court agree with Plaintiffs that a stay will result in undue prejudice because key witnesses' memories will go stale in the interim. Considering that these witnesses would speak primarily to source code, which is easily produced and preserved, and absent any non-speculative allegations as to the future availability of evidence, the court does not find undue prejudice. See, e.g., Pi-Net Int'l, Inc. v. Focus Bus. Bank, No. 12-cv-04958-PSG, 2013 WL 4475940, at *4 (N.D. Cal. Aug. 16 2013). Additionally, to the extent that Plaintiffs suggest the time delay will allow Defendants to release new versions of infringing products, the court does not agree that such a delay will result in undue prejudice. The parties are not competitors; therefore, any harm from the temporary halt in enforcing Plaintiffs' rights in the asserted patents can be addressed through a final damages award. Having found no specific undue prejudice to Plaintiffs, the court finds that this final factor weighs in favor on a stay.

## IV. CONCLUSION

For the foregoing reasons, the Court CONDITIONALLY GRANTS Defendants' Motion to Stay. This action is STAYED in its entirety pending final exhaustion of the relevant review

United States District Court
For the Northern District of California

proceedings, including any appeals and pending the final resolution of the arbitration, including any appeals.[3]

This grant is contingent on Defendants' agreement to be bound by the same estoppel that limits IPR petitioners as set forth by 35 U.S.C. § 315(e). Defendants shall file, on or before **August 29, 2014**, a notice indicating their consent or declination to be bound by the above-described estoppel limitations. The notice shall not contain explanation or argument and shall not exceed one page in length. Defendants are hereby notified that, absent full consent, the court may sua sponte reconsider this Order.

Assuming this action remains stayed, the parties in each case shall submit a joint status report apprising the court of the status of the relevant review proceedings and arbitration on February 11, 2015, and every six months thereafter. These reports shall be filed as separate docket entries on ECF/PACER.

The parties shall provide notice to the court within one week of final exhaustion of all relevant review proceedings, including appeals, and within one week of final resolution of the arbitration, including appeals. At the conclusion of both categories of proceedings, the parties shall request that this matter be reopened, and that a case management conference be scheduled.

The clerk shall ADMINISTRATIVELY CLOSE this file.

**IT IS SO ORDERED.**

Dated: August 20, 2014

EDWARD J. DAVILA
United States District Judge

[3] This order does not preclude any party from moving to reopen this action, when appropriate.