1    *COUNSEL LISTED ON SIGNATURE PAGE*

2

3                    **UNITED STATES DISTRICT COURT**

4                    **NORTHERN DISTRICT OF CALIFORNIA**

5                         **SAN JOSE DIVISION**

6    PERSONALWEB TECHNOLOGIES, LLC          Case No. 5:13-cv-01317-EJD
     and LEVEL 3 COMMUNICATIONS, LLC,
7                                           **REPLY IN SUPPORT OF**
8                            Plaintiffs,    **DEFENDANTS' MOTION FOR**
                                            **JUDGMENT ON THE PLEADINGS**
9            v.
                                            Date: Feb. 6, 2020
10   GOOGLE LLC, ET AL.,                    Time: 9:00 a.m.
                                            Before: Hon. Edward J. Davila
11                           Defendants.    Courtroom: 4, 5th Floor

12

13   PERSONALWEB TECHNOLOGIES, LLC          Case No. 5:13-cv-01356-EJD
     and LEVEL 3 COMMUNICATIONS, LLC,
14                                          **REPLY IN SUPPORT OF**
                             Plaintiffs,    **DEFENDANTS' MOTION FOR**
15                                          **JUDGMENT ON THE PLEADINGS**
16           v.
                                            Date: Feb. 6, 2020
17   FACEBOOK, INC.                         Time: 9:00 a.m.
                                            Before: Hon. Edward J. Davila
18                           Defendant.     Courtroom: 4, 5th Floor

19

20   PERSONALWEB TECHNOLOGIES, LLC          Case No. 5:13-cv-01358-EJD
     and LEVEL 3 COMMUNICATIONS, LLC,
21                                          **REPLY IN SUPPORT OF**
                             Plaintiffs,    **DEFENDANTS' MOTION FOR**
22                                          **JUDGMENT ON THE PLEADINGS**
23       v.
                                            Date: Feb. 6, 2020
24                                          Time: 9:00 a.m.
     EMC CORPORATION and VMWARE, INC.,      Before: Hon. Edward J. Davila
25                           Defendants.    Courtroom: 4, 5th Floor

26

27

28

---

1

## **TABLE OF CONTENTS**

2

3    I.     Introduction ........................................................................................................... 1

4    II.    PersonalWeb's Arguments Are Incongruous with the PTAB's Findings and
Federal Circuit's Affirmances in Multiple IPRs, As Well As with the

5         Admissions of PersonalWeb's Prior Expert........................................................... 1

6          A.    EMC's and VMware's IPRs on the '791, '280, '539, '544, '662, and
'096 Patents Established that the True Name Patents' Content-Based

7               Identifiers Were Not Novel or Inventive. ................................................... 2

8          B.    In IPR Proceedings for the '310 Patent, PersonalWeb Did Not Dispute
that Content-Based Identifiers Were Known in the Art................................. 4

9

10          C.    PersonalWeb Is Estopped from Offering New Expert Testimony
Inconsistent with the Federal Circuit's and PTAB's Opinions..................... 5

11    III.    The Asserted Claims Are Not Patent Eligible Under Section 101. ......................... 6

12          A.    The Fundamental Ideas of the True Name Patents Are Abstract................................. 6

13          B.    The Asserted Claims Do Not Add Any Inventive Concepts........................................ 10

14              1.    Content-Based Identifiers Are Not "Inventive."............................................ 10

15              2.    The Specification Does Not Establish Inventiveness.................................... 11

16              3.    PersonalWeb's Other Arguments Are Meritless............................................ 12

17    IV.    The Court Should Deny the Request to Convert Defendants'
Rule 12(c) Motion to a Motion for Summary Judgment. ....................................... 14

18

19    V.    Conclusion ........................................................................................................... 15

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ancora Techs., Inc. v. HTC America, Inc.*,
908 F.3d 1343 (Fed. Cir. 2018).................................................................................... 8-9

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019)....................................................................................6, 14

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
No. 15-CV-05469-EDL, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016)........................15

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
135 S. Ct. 1293 (2015) ...................................................................................................5

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018).......................................................................2, 12, 15

*Bilski v. Kappos*,
561 U.S. 593 (2010) .......................................................................................................7

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
319 F. Supp. 3d 818 (E.D. Va. 2018)....................................................................7, 9-10

*BrightEdge Techs., Inc. v. Searchmetrics, GmbH*,
304 F. Supp. 3d 859 (N.D. Cal. 2018) .....................................................................4, 13

*ChargePoint, Inc. v. SemaConnect, Inc.*,
No. CV MJG-17-3717, 2018 WL 1471685 (D. Md. Mar. 23, 2018).............................6

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016).....................................................................................8

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
137 F. Supp. 3d 1157 (N.D. Cal. 2015) ..................................................................4-5, 13

*Finjan, Inc. v. Bitdefender Inc.*,
No. 17-cv-04790-HSG, 2019 WL 634985 (N.D. Cal. Feb. 14, 2019)...........................6

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018).....................................................................................8

*In re Greenstein*,
No. 2019-1520, 2019 WL 6713289 (Fed. Cir. Dec. 10, 2019) ............................... 13-14

*GT Nexus, Inc. v. Inttra, Inc.*,
No. C 11-02145-SBA, 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015)............................1

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
235 F. Supp. 3d 577 (D. Del. 2016) ..............................................................................2

*James v. Poole*,
No. 06-CV-6007 MAT, 2013 WL 132492 (W.D.N.Y. Jan. 9, 2013) .............................14

*Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*,
    No. 12-cv-6781-RJS, 2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016)..............................................5

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019)........................................................................................... 7-8

*Lapella v. City of Atlantic City*,
    No. CIV. 10-2454 JBS/JS, 2012 WL 2952411 (D.N.J. July 18, 2012) .........................................15

*Maxell, Ltd. v. Fandango Media, LLC*,
    No. CV 17-07534 AG (SSX), 2018 WL 4502492 (C.D. Cal. Sept. 11, 2018) ..............................11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299, 1313 (Fed. Cir. 2016)....................................................................................8

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) .....................................................................................5

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013) ............................................................................................5

*OpenTV, Inc. v. Apple, Inc.*,
    No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015)....................................1, 7, 9

*OpenTV, Inc. v. Apple Inc.*,
    No. 5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) .........................................9

*Papst Licensing GmbH & Co. KG v. Samsung Elecs. Am., Inc.*,
    924 F.3d 1243 (Fed. Cir. 2019) ............................................................................................5

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.*,
    193 F. Supp. 3d 1069 (N.D. Cal. 2016) ..................................................................................6

*Richter v. Smith*,
    No. C16-4098-LTS, 2018 WL 6728515 (N.D. Iowa Dec. 21, 2018) ..........................................15

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)..........................................................................................1, 7

*Smart Authentication IP, LLC v. Elec. Arts Inc.*,
    402 F. Supp. 3d 842 (N.D. Cal. 2019) ...............................................................................4, 13

*Smart Sys. Innovations, LLC. v. Chicago Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017)..........................................................................................11

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
    778 F.3d 1311 (Fed. Cir. 2015) ............................................................................................5

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    No. CV 14-1006-RGA, 2016 WL 4373698 (D. Del. Aug. 15, 2016)...........................................14

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)............................................................................................4

**Federal Statutes**

35 U.S.C. § 101 ................................................................................................ *passim*

35 U.S.C. § 112 ........................................................................................................12

35 U.S.C. § 311 ..........................................................................................................4

**Federal Rules**

Federal Rule of Civil Procedure 12(c) ..............................................................5, 15

Federal Rule of Civil Procedure 12(d) ....................................................................5

1

## I.      INTRODUCTION

2        There is no dispute that the asserted claims of the '310, '280, and '662 "True Name" patents

3 are directed to "stor[ing], locat[ing], manag[ing], synchroniz[ing], and access[ing] [data items] using

4 [a] content-based identifier." Opp. 4.  The same ideas have been found abstract and not eligible for

5 patent protection under 35 U.S.C. § 101 ("Section 101") by multiple courts.  The legal authority is

6 clear—fundamental data management techniques like these are not patentable.  *See, e.g.*, *OpenTV,*

7 *Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015); *Secured Mail*

8 *Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017).

9        PersonalWeb attempts to preserve the challenged claims by suggesting they "improve"

10 computer technology by using hash-based identifiers, rather than conventional file names, to manage

11 data. *E.g.*, Opp. 14.  But patent eligibility under Section 101 requires more than mere

12 "improvements" to existing technologies.  And even more significantly, the use of ***hash-based***

13 identifiers alone does not transform the claims into something patentable.  Indeed, PersonalWeb's

14 argument to the contrary is flatly inconsistent with the record developed at the PTAB and affirmed by

15 the Federal Circuit.  Specifically, the PTAB found—multiple times over—that the patents' content-

16 based data identifiers were ***not*** novel or inventive.  Even PersonalWeb's own prior technical expert,

17 Dr. Robert Dewar, ***conceded*** that content-based identifiers and their usefulness for managing data in

18 a computer system were known.  PersonalWeb cannot conjure up an issue of fact by introducing a

19 new expert whose declaration directly contradicts these prior rulings and admissions.  The PTAB and

20 Federal Circuit have already resolved this issue in multiple final and binding decisions.

21        For the reasons set forth below, and in Defendants' Motion for Judgment on the Pleadings

22 ("Mot."), Defendants respectfully request that the Court invalidate the asserted claims of the '310,

23 '280, and '662 patents as patent ineligible under 35 U.S.C. § 101.

24 ## II.     PERSONALWEB'S ARGUMENTS ARE INCONGRUOUS WITH THE PTAB'S
FINDINGS AND FEDERAL CIRCUIT'S AFFIRMANCES IN MULTIPLE IPRS, AS
25      WELL AS WITH THE ADMISSIONS OF PERSONALWEB'S PRIOR EXPERT.

26        Patent eligibility is fundamentally a question of law, regularly decided on the pleadings.  *See,*

27 *e.g.*, *GT Nexus, Inc. v. Inttra, Inc.*, No. C 11-02145-SBA, 2015 WL 6747142, at *3 (N.D. Cal. Nov.

28 5, 2015) ("A court may determine whether patent claims satisfy Section 101's conditions and

requirements for patentability on a motion for judgment on the pleadings."), *aff'd*, 669 F. App'x 562 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 235 F. Supp. 3d 577, 585 (D. Del. 2016) ("The Federal Circuit has affirmed district courts that have granted motions for judgment on the pleadings based on § 101 challenges." (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014))); *cf. Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Patent eligibility has in many cases been resolved on motions to dismiss or summary judgment.  Nothing in this decision should be viewed as casting doubt on the propriety of those cases.").

PersonalWeb attempts to manufacture an issue of fact—where there is none—with a new expert declaration, which claims that the content-based identifiers referenced in its patent claims were novel and inventive.  According to PersonalWeb, there is "uncontroverted evidence [that] shows that a POSITA would ***not*** have deemed the 'ordered combinations' of elements in the asserted claims to be well-understood, routine or conventional."  Opp. 21 (emphasis in original).[1]  The cornerstone of this argument is PersonalWeb's claim that "by the April 1995 priority date …, ***no one*** was using content-based values (such as MD4, MD5, or SHA values) as names or identifiers for data items."  *Id.* at 23-24.  PersonalWeb similarly claims that "***no technology existed***" to identify a sequence of bits without a conventional name and then "transfer," "determine authorization," or "delete" that bit sequence.  *Id.* at 14; *see id.* at 24 ("In April 1995, ***no one*** used content-based values in any of these ways." (emphasis in original) (citing Russ Decl. ¶¶ 80-82)).

As detailed below, these new assertions are flatly inconsistent with the PTAB's and Federal Circuit's rulings in multiple IPRs, with PersonalWeb's own statements in those IPRs, and with the admissions of PersonalWeb's prior expert.  Accordingly, they fail to create a *genuine* issue of fact.

### A.     EMC's and VMware's IPRs on the '791, '280, '539, '544, '662, and '096 Patents Established that the True Name Patents' Content-Based Identifiers Were Not Novel or Inventive.

PersonalWeb attempts to dismiss the import of EMC's and VMware's IPRs summarily, arguing that they "have no relevance to the ongoing cases or this motion" because they related to different claims.  Opp. 8.  But each of those IPRs related to patents with ***identical specifications*** and

---

[1] All emphasis in quotations is added unless otherwise noted.

*identical priority dates* to all three of the True Name patents asserted here.  These IPRs established—indisputably—that the content-based identifiers referenced in PersonalWeb's remaining patent claims were not inventive.  There can be no genuine dispute of material fact on this issue.

As explained in Defendants' Motion, the PTAB found in six separate decisions—all affirmed by the Federal Circuit—that it was known in the art to use content-based identifiers, based on "hashes" of data items, for precisely the kinds of data-management tasks that PersonalWeb now claims were done by "no one" at the time.  *See* Mot. 5-6.  For example:

- In the '791 IPR, the PTAB found that the prior art disclosed identifying, locating, accessing, and deduplicating data items using "a substantially unique identifier … being determined using and depending on all of the data in the data item and only the data in the data item."  *E.g.*, Ex. A[2] at 11, 15-16, 18-19, 38-39.

- In the '280 IPR, the PTAB found that the prior art disclosed requesting and delivering a data file using "a hash of the contents of the data file."  *E.g.*, Ex. B at 16-17.

- In the '662 IPR, the PTAB found that the prior art disclosed obtaining "digital data item identifiers" for data items "being based, at least in part, on the contents of the data item."  *E.g.*, Ex. C at 4, 9-10.[3]

In making these findings, the PTAB credited EMC's expert, Dr. Douglas Clark of Princeton University, who explained at length how content-based identifiers—created by "hashing" the contents of a data item so that identical data items would have the same identifier—were well known in the prior art.  In fact, even PersonalWeb's own expert, Dr. Robert Dewar, *conceded* that these concepts were disclosed in the prior art that was the focus of the IPRs (Woodhill and Kantor).  Ex. H (Dewar IPR Dep.) at 136:8-22 (admitting that Woodhill reference discloses "binary object identifier" based on hash of file contents); *id.* at 249:15-250:23 (admitting that Kantor reference discloses "content-based identifiers" based on "a hash of the file").

PersonalWeb attempts to dismiss the IPR rulings by claiming that the PTAB found only that the prior art disclosed a "binary hash algorithm" or "a hash on the contents of the binary object."  Opp. 24.  But the PTAB also found that those hashes were used *as identifiers*, including to *access data items* and *identify duplicates*.  Mot. 5-6.  In short, PersonalWeb's litigation arguments and new expert opinions are directly contrary to the findings of the PTAB concerning directly related patents.

---

[2] All citations to "Ex. __" are to the Declaration of Marissa A. Lalli (filed with Defendant's Motion) or to the Declaration of Marissa A. Lalli in Support of this Reply (filed herewith).

[3] Notably, asserted claim 33 of the '662 patent is very similar to invalidated claim 30.

1

2

**B.      In IPR Proceedings for the '310 Patent, PersonalWeb Did Not Dispute that Content-Based Identifiers Were Known in the Art.**

3

PersonalWeb focuses, in its opposition, on Apple's IPR proceedings for the '310 patent.  But,

4

consistent with the earlier IPRs, the PTAB again found that the True Name patents' content-based

5

identifiers were well known in the art.  The Federal Circuit ultimately reversed, but ***not*** based on the

6

novelty of the content-based identifiers.  Rather, the Federal Circuit found that the particular prior art

7

at issue did not sufficiently disclose *comparing* the content-based identifier to a plurality of other

8

values (as opposed to a single value).  Mot. 6-7.

9

Significantly, on appeal, PersonalWeb did not even attempt to claim that the '310 patent's

10

content-based identifiers were inventive.  Nor could it—the PTAB and the Federal Circuit had both

11

already ruled multiple times over in the earlier IPR proceedings that they were not.  Instead,

12

PersonalWeb conceded in its Federal Circuit brief that the PTAB had "concluded that Woodhill's

13

Binary Object Identifiers were '***equivalent***' to the True Name terms recited in the claims of the '310

14

patent (*i.e.*, the 'digital identifier,' 'content-dependent name,' and 'content-based-identifier')."  Ex. I

15

(PersonalWeb's Second Federal Circuit Brief) at 15.  As in the IPRs for the other True Name patents,

16

the undisputed record in the IPR proceedings for the '310 patent thus confirms that use of content-

17

based identifiers for data management was not itself inventive.

18

Further, PersonalWeb's focus on the fact that certain claims of the '310 patent survived

19

Apple's IPR on obviousness grounds is misguided.  ***First***, the ruling of the PTAB on invalidity for

20

the claims as a whole is distinct from the eligibility inquiry under Section 101.  *Two-Way Media Ltd.*

21

*v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) ("Eligibility and novelty

22

are separate inquiries.").  The PTAB never considered patent eligibility—nor could it, because the

23

PTAB's statutory mandate allows it to consider only whether issued claims were anticipated or

24

rendered obvious by prior art patents or printed publications.  *See* 35 U.S.C. § 311(b).  Accordingly,

25

numerous courts—including many in this district—have invalidated claims under Section 101 even

26

after those same claims survived IPR challenges.  *See, e.g.*, *Smart Authentication IP, LLC v. Elec.*

27

*Arts Inc.*, 402 F. Supp. 3d 842, 846, 854 (N.D. Cal. 2019); *BrightEdge Techs., Inc. v. Searchmetrics,*

28

*GmbH*, 304 F. Supp. 3d 859, 873 (N.D. Cal. 2018); *Evolutionary Intelligence, LLC v. Sprint Nextel*

*Corp.*, 137 F. Supp. 3d 1157, 1163, 1169-1170 (N.D. Cal. 2015), *aff'd*, 677 F. App'x 679 (Fed. Cir. 2017).  ***Second***, even considering Apple's IPR proceedings for the '310 patent, there was no finding that the use of content-based identifiers for basic file-management functions was novel, only that the disputed prior art did not the inherently disclose a particular ***use*** of such content-based identifiers— *i.e.*, comparing the identifier to a plurality of other values in the claim limitation at issue.

### C.   PersonalWeb Is Estopped from Offering New Expert Testimony Inconsistent with the Federal Circuit's and PTAB's Opinions.

PersonalWeb attempts to avoid the long history of this case with a new expert declaration, [4] which is directly contrary to the PTAB's and Federal Circuit's rulings and PersonalWeb's prior admissions.  This new and untimely declaration does not create a genuine issue of fact.

***First***, in light of the PTAB's and Federal Circuit's multiple rulings and PersonalWeb's prior concessions, PersonalWeb is estopped from now challenging the findings that the patents' content-based identifiers were known in the art and were used for data-management tasks.  *See, e.g.*, *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) (preclusion can apply where a "a single issue is before a court and an administrative agency").  The Federal Circuit has repeatedly rejected attempts, like PersonalWeb's here, to relitigate issues already resolved in prior proceedings. *See Papst Licensing GmbH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1252 (Fed. Cir. 2019) (estoppel barred new construction of limitation "materially identical" to limitation construed in IPR of related patent); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) (applying collateral estoppel where newly asserted dependent claim added insubstantial limitation to previously invalidated claim); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (finding estoppel based on invalidation of "substantially similar" claims); *see also Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, No. 12-cv-6781-RJS, 2016 WL 5793745, at *5 (S.D.N.Y. Sept. 30, 2016) (applying collateral estoppel to "largely duplicative" elements where related patent had been found invalid in separate case).

***Second***, PersonalWeb cannot bring in a new expert to avoid the admissions of its prior expert, Dr. Dewar, in the related IPRs.  As in other contexts, such as claim construction, expert opinions in

---

[4] Expert declarations are not among the materials that a court may consider under Rule 12(c).  *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 995 (N.D. Cal. 2014); Fed. R. Civ. P. 12(d).

district court that contradict earlier expert opinions provided to the Patent Office should not be credited.  *See, e.g.*, *Finjan, Inc. v. Bitdefender Inc.*, No. 17-cv-04790-HSG, 2019 WL 634985, at *7 (N.D. Cal. Feb. 14, 2019) (disregarding new expert opinion in claim construction proceedings, finding that plaintiff's earlier expert opinion in IPR "sufficiently contradicted its current position to meet the high threshold for disavowal").

*Third*, the dispute PersonalWeb is attempting to manufacture is not "genuine."  There is no need for the Court to credit Dr. Russ's claims given that they are incompatible with the record in the IPR proceedings.  "The Court … need not accept as true allegations contradicted by judicially noticeable facts ….  Nor must the Court 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'  Mere 'conclusory allegations of law and unwarranted inferences are insufficient' to defeat a motion for judgment on the pleadings."  *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1078 (N.D. Cal. 2016) (citation omitted), *aff'd*, 684 F. App'x 971 (Fed. Cir. 2017); *see also Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755 (Fed. Cir. 2019) (affirming district court's disregard of expert declaration in allowing motion to dismiss on Section 101 grounds); *ChargePoint, Inc. v. SemaConnect, Inc.*, No. CV MJG-17-3717, 2018 WL 1471685, at *4 (D. Md. Mar. 23, 2018) (disregarding expert declaration and dismissing claims under Section 101), *aff'd*, 920 F.3d 759 (Fed. Cir. 2019).  As explained in greater detail in Section IV, *infra* pages 14-15, given the absence of any genuine dispute, there is no basis to convert this motion to one for summary judgment.

## III.   THE ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE UNDER SECTION 101.

Setting aside PersonalWeb's attempt to manufacture a factual dispute, it is clear that the remaining asserted claims are not patent eligible.  Under the correct standards, the patents' claims cover abstract ideas that are not transformed by any inventive concepts.

### A.   The Fundamental Ideas of the True Name Patents Are Abstract.

PersonalWeb concedes that the True Name patents focus on the idea of using content-based identifiers to manage data in a computer system: "Each asserted claim recites using content-based values as a name or identifier for a data item: in the '310 patent, to control access to data items; in the '280 patent, to retrieve and deliver copies of data items; and in the '662 patent, to mark copies of data

items for deletion."  Opp. 24 (citing Russ Decl. ¶¶ 80-82); *see also* Opp. 4.  And as Defendants have explained, similar ideas have repeatedly been found abstract under Step 1 of the *Alice* framework.  *See* Mot. 11-14 ('310 patent); *id.* at 19-20 ('280 patent); *id.* at 23 ('662 patent); *see also OpenTV, Inc.*, 2015 WL 1535328; *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 319 F. Supp. 3d 818 (E.D. Va. 2018), *aff'd*, 778 F. App'x 882 (Fed. Cir. 2019); *Secured Mail Sols.*, 873 F.3d at 911.

Nonetheless, PersonalWeb argues that these ideas are not "abstract" because they are "an ***application*** of applying a hash algorithm to bit sequences in order to solve a technical problem in computer networks."  Opp. 16; *see also id.* at 15 ("[T]he claims require the application of a cryptographic hash algorithm to bit sequences, to create substantially unique identifiers, and then compare an identifier for a data item to others in a network to perform particularly-recited data management operations.").  But characterizing the idea as an "application" of well-known hashing technology to an otherwise abstract concept (de-duplication, controlling access, etc.) does not render the idea non-abstract.  *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use … did not make the concept patentable.").

PersonalWeb also relies on several inapposite cases, especially *Koninklijke KPN N.V. v. Gemalto M2M GmbH* ("*KPN*"), 942 F.3d 1143 (Fed. Cir. 2019).  *See* Opp. 16-17.  In that case, the claimed invention was a system to generate "check data" (essentially, checksums) in a way that was more likely to work accurately in situations where there were "systematic errors" with data transmission.  *Id.* at 1145.  The patent explained that such errors could lead to situations where the same check data was generated for a given block of data before and after transmission, even if the data was corrupted during transmission.  *Id.*  To address this problem, the patent proposed adding variability to the calculation of the check data, including by switching around bits in the data block or using different algorithms.  *Id.* at 1146.  The Federal Circuit reversed the district court's finding that three asserted claims were patent ineligible under Section 101, concluding that the claimed ideas were not abstract.  *Id.* at 1153.

Unlike this case, however, the claims at issue in *KPN* were focused on clear, specific improvements to existing computer functions.  To analogize to the patents here, the *KPN* patent claimed an innovative way to ***generate*** a content-based identifier—it provided specific guidance on

manipulating data to create a robust identifier that would enable more accurate error detection.  The True Name patents, by contrast, describe the use of ordinary, well-known identifiers to perform ordinary computer functions—and thus do not offer a "sufficiently specific implementation … of an existing tool … that improves the functioning of the overall technological process" of data management.  942 F.3d at 1151.  In fact, the True Name patents **concede** that hash or message digest functions used to create their identifiers are conventional—they are discussed in the specification only in passing, presented as tools known to a person of ordinary skill in the art.  *See, e.g.*, '310 patent at 12:42-46 ("A family of functions with the above properties [for calculating the True Name] are the so-called message digest functions, which are used in digital security systems as techniques for authentification [sic] of data.  These functions (or algorithms) include MD4, MD5, and SHA.")[5]

PersonalWeb's other cited Federal Circuit decisions are also distinguishable.  In *McRO, Inc. v. Bandai Namco Games America Inc.*, the court reversed the district court's decision that the claims were directed to the abstract idea "of automated rules-based use of morph targets and delta sets for lip-synchronized three-dimensional animation" and noted that the claims at issue were "limited to rules with specific characteristics"—unlike the broad claims here, which simply "compare" the identifiers to other values for basic file-management purposes.  837 F.3d 1299, 1313 (Fed. Cir. 2016).  In *Enfish, LLC v. Microsoft Corp.*, the patent-eligible invention covered a narrow system for data storage and retrieval, featuring claims that recited a specific self-referential logical structure—again, notably different from the broad claims here, which simply recite the application of conventional content-based identifiers to perform conventional data-management tasks.  822 F.3d 1327, 1336-1337 (Fed. Cir. 2016); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) (noting that "the self-referential database found patent eligible in *Enfish* did more than allow computers to perform familiar tasks with greater speed and efficiency").  In *Finjan*, the patent-eligible claims covered adaptive "behavior-based virus scan" technology that represented a significant departure from earlier systems—again, in contrast to PersonalWeb's adoption of conventional file-management tasks.  879 F.3d at 1304-06.  And in *Ancora Techs., Inc. v. HTC*

---

[5] Notably, the MD4 and MD5 hash functions referenced in the specification were developed by Dr. Ron Rivest, a founder of EMC's subsidiary RSA Security, Inc.

*America, Inc.*, the asserted claim solved a problem in license authorization in an "assertedly unexpected way … by relying on specific and unique characteristics" of the computer's non-volatile memory—a qualitative improvement that contrasts sharply with the '310 patent's simple comparison of an identifier to a list of other values to determine if access is authorized, the '280 patent's simple use of an identifier to retrieve files, and the '662 patent's simple use of an identifier to identify duplicate files for deletion.  908 F.3d 1343, 1348-1349 (Fed. Cir. 2018).

PersonalWeb also draws artificial distinctions between the instant case and those cited by Defendants.  Opp. 18-20.  For example, PersonalWeb argues that *OpenTV, Inc. v. Apple Inc.*, 2015 WL 1535328—which found the asserted claims unpatentable—is distinguishable because the claims themselves did not recite specific information about calculating identifiers or achieving the "desired result of increasing security for the transfer of confidential information."  Opp. 18.  This argument, however, ignores the fact that the claims asserted here *also* do not recite specific information about achieving a specific result.  *See OpenTV*, 2015 WL 1535328, at *4 ("While the specification—from which OpenTV draws much of the language it uses to support its argument that the claims are not drawn to an abstract idea—may be used to provide context for interpretation of the patent claims, '[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)) (internal quotation marks omitted)).[6]  PersonalWeb similarly attempts to distinguish *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, in which the unpatentable claims included "determining user information for a user" and "generating a user identifier from the determined user information."  319 F. Supp. 3d at 822.  PersonalWeb argues that "the claims failed to recite the specific way in which the result was achieved, beyond generic generating, transmitting, receiving, and storing limitations."  Opp. 19.  In doing so, however, PersonalWeb ignores that (similar to the claims asserted here) the disputed claims in *Bridge & Post* covered "swapping a changeable identifier

---

[6] PersonalWeb also completely ignores this Court's relevant decision in a separate *OpenTV* case cited in Defendants' Motion.  *OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008-EJD, 2016 WL 344845, at *1 (N.D. Cal. Jan. 28, 2016) ("The practice of controlling access to information by verifying credentials (via well-known encryption methods) is neither novel nor specific to interactive television systems.").

1    with an unchangeable one" and (as here) the patentee "d[id] not claim to invent the persistent

2    identifier and therefore fail[ed] to invent a new technology." *Bridge & Post*, 319 F. Supp. 3d at 825.

3        Finally, PersonalWeb's curt dismissal of the analogy of the True Name patents to catalog and

4    call number systems long used in libraries underscores the weakness of its position.  Opp. 1-2.

5    Contrary to PersonalWeb's argument, librarians *can* locate books without a book's title—they can

6    rely entirely on call numbers, which are unique identifiers.  Different volumes of a set of books *can*

7    be assigned separate call numbers, just as data objects can be divided into separate subunits.  New

8    editions of books receive updated call numbers, distinguishing them from older editions.  And

9    libraries *can* use call numbers in their catalogs to see if they have multiple copies of the same text,

10   simplifying deduplication.  In short, the library-catalog analogy illustrates that the True Name patents

11   merely take well-known concepts in data management and implement them on generic computers.

12       For these reasons, the fundamental ideas underlying the asserted claims are all abstract.

13       **B.     The Asserted Claims Do Not Add Any Inventive Concepts.**

14       For Step 2 of the *Alice* analysis, PersonalWeb offers a litany of arguments in an effort to

15   support its position that the use of a "substantially unique identifier" for data-management functions

16   adds an "inventive concept."  Opp. 20-29.  All are fundamentally flawed.

17       **1.     Content-Based Identifiers Are Not "Inventive."**

18       Much of PersonalWeb's opposition—namely, its "first," "fourth," "sixth," and "seventh"

19   arguments—focuses on the supposed inventiveness of using content-based identifiers, such as

20   MD5/hash algorithms, for data management.  But as explained above, there is no genuine dispute on

21   this issue.  The PTAB and Federal Circuit have confirmed, multiple times over, that hash-based

22   identifiers in file-management systems were not inventive.[7]

23       PersonalWeb claims that the IPR findings are insignificant because they supposedly did not

24   establish that such identifiers were "well-understood, routine, and conventional."  Opp. 24.  That

25   assertion is belied by the True Name specification itself, which (as noted above) treats hash or

26   _____

27   [7] Tellingly, PersonalWeb focuses on the narrower, MD5-specific claims (*e.g.*, '280 claims 31 and
     32), rather than the greater number of asserted claims that merely recite "data identifiers" or similarly
     broad limitations, including based on "message digest" or "hash functions."  *See, e.g.*, '310 patent

28   claims 24, 32, 81, 82, and 86.

1 message digest functions as conventional and merely describes embodiments using such functions.

2 *See, e.g.*, '310 patent at 12:21-46.[8]  Moreover, PersonalWeb's claim that it invented "a ***new use*** of

3 hash functions … to generate unique, content-based names for data files" (Opp. 25 (emphasis in

4 original)) is undermined by the PTAB's decisions invalidating the claims of other True Name patents

5 covering precisely this functionality.  This contention concerning a "new use" is also inapposite

6 because, as explained above, the mere application of a conventional technology (hash functions) to

7 abstract concepts (data management) does not confer "inventiveness."

8                    **2.        The Specification Does Not Establish Inventiveness.**

9           PersonalWeb's "sixth" argument also relies on language in the specification describing the

10 alleged "improvements" or advantages that the alleged inventions provided.  *See* Opp. 27 ("These

11 improvements are listed in the '310 patent at column 4:4-52.").  But a description in the specification

12 of purported "improvements" does not necessarily prove inventiveness.  Indeed, in a similar case

13 involving claims directed to restrictions on accessing digital content, a court granted a motion for

14 judgment on the pleadings under Section 101 notwithstanding the patent owner's claim that "a

15 question of material fact precludes dismissal because the patent specification characterizes the

16 disclosed invention as providing improvements over the prior art."  *Maxell, Ltd. v. Fandango Media,*

17 *LLC*, No. CV 17-07534 AG (SSX), 2018 WL 4502492, at *8 (C.D. Cal. Sept. 11, 2018); *see id.* at *9

18 ("It is possible that the patent specification in this case discloses an 'improvement' to previous digital

19 video transmission systems.  It certainly states that it does.  But the § 101 inquiry does not require

20 just any 'improvement.'  Indeed, '[w]e may assume that the techniques claimed are

21 '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." (quoting *SAP*

22 *Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1163 (Fed. Cir. 2018))), *aff'd*, 779 F. App'x 745 (Fed.

23 Cir. 2019).[9]  PersonalWeb's emphasis on purported "improvements" is especially inapposite in this

24 case, where those "improvements" conflict directly with the undisputed record.

---

25 [8] As the Federal Circuit held in another case, "***[a] hash identifier is a generic and routine concept***
26 that does not transform … claims to a patent eligible application of the abstract idea," even where the
claims provide "concreteness and narrowness."  *Smart Sys. Innovations, LLC. v. Chicago Transit*
27 *Auth.*, 873 F.3d 1364, 1374 n.9 (Fed. Cir. 2017).

28 [9] PersonalWeb similarly contends that the claims are "inventive" because the patents disclose "how
the improvement [over the prior art] is achieved."  Opp. 13.  But PersonalWeb offers no support for

---

Notably, PersonalWeb's cited authority does not hold that a specification's description of purported improvements proves inventiveness.  Specifically, PersonalWeb leans on *Berkheimer*, 881 F.3d at 1360.  There, the Federal Circuit found it unclear whether the combination of elements—a computer system with a "parser" that parsed items into "multi-part object structures" with "searchable information tags," evaluated the object structures for "predetermined variance[s]" with "predetermined standard[s]" and "user defined rule[s]," then stored the "reconciled" object structures in an archive "without substantial redundancy"—was conventional or routine.  *Id.* at 1366, 1370.  In this case, by contrast, there can be no genuine dispute that using content-based identifiers to determine if access is "authorized" (the '310 patent), to request a data file (the '280 patent), or to mark files for deletion (the '662 patent) was not inventive but conventional and routine.  Indeed, the True Name patents explicitly state that they focus on "standard file management" functions.  '310 patent at 6:25-32.[10]

### 3.    PersonalWeb's Other Arguments Are Meritless.

PersonalWeb's remaining arguments are also without merit.  For example, in its "second" argument, PersonalWeb contends that the patents are narrow and would not preempt fundamental concepts, including because of the PTAB's claim construction.  Opp. 22.  Certainly, PersonalWeb has not treated these patents as narrow.  PersonalWeb and prior owners have asserted them across a wide array of technologies—including against content-delivery networks, peer-to-peer music swapping, cloud storage, and most recently, web applications.  *See* Mot. 4 n.4 (describing prior assertion of True

---

its implicit claim that, as long as a patent claim explains *how* to implement an improvement over the prior art, it is insulated from scrutiny under Section 101.  PersonalWeb's argument, if adopted, would effectively collapse the distinction between the eligibility requirement under Section 101 and the enablement/written description requirements under 35 U.S.C. § 112.

[10] Furthermore, *Berkheimer* requires that improvements be "captured ***in the claims***," which must "recite … the purportedly unconventional activities disclosed in the specification."  881 F.3d at 1369.  Contrary to PersonalWeb's contention (Opp. 27), the asserted claims do ***not*** "capture" the supposed improvements identified in the specification.  *See* '310 patent at 4:4-52.  Each of the purported improvements named in the specification is either inapplicable to the asserted claims or is too hazy to be considered for purposes of the Section 101 analysis.  For example, none of these "improvements" relates to the idea of "control[ling] access to data items" using content-based identifiers that (by PersonalWeb's own admission) is the core of the asserted '310 patent claims.  Opp. 24.  In fact, the specification ***teaches away*** from that idea by explaining that one improvement is that "the system provides ***transparent*** access to any data item."  *Id.* at 4:10.  Moreover, many of these purported improvements were precisely the kind that the PTAB found were disclosed in the prior art.  *See* Section II.A, *supra* pages 2-3.

1  Name patents).  Even as to the last category, the significantly different accused systems that EMC,

2  VMware, Facebook, and Google operate reveal PersonalWeb's broad reading of the asserted claims.

3       In its "third" argument, PersonalWeb contends that Defendants "improperly break[] the

4  claims down into their individual elements" to demonstrate ineligibility.  Opp. 23.  This is incorrect.

5  Defendants' arguments consistently focus on the overall structure of the asserted claims.  Mot. at 9-

6  24.  As noted above, there is nothing inventive about those claims' use of a content-based identifier to

7  control access to files ('310 patent), request or provide files, including based on a "measure of

8  availability" of servers ('280 patent), or mark duplicate files for deletion ('662 patent).  Again, given

9  the PTAB record and Federal Circuit precedent, content-based identifiers are "generic" components

10  that have been used in other systems for precisely those basic file-management tasks.

11       And, contrary to PersonalWeb's "fourth" argument, the fact that the '310 patent survived

12  Apple's IPR is also irrelevant.  As discussed above, the Federal Circuit has made clear that

13  "[e]ligibility and novelty are separate inquiries" and, as such, numerous courts have invalidated

14  claims under Section 101 even after those same claims survived IPR challenges.  *See* Section II.B,

15  *supra* pages 4-5.  In light of the distinction between eligibility and novelty, numerous courts—

16  including many in this district—have invalidated claims under Section 101 even after those same

17  claims survived IPR challenges.  *See, e.g.*, *Smart Authentication IP*, 402 F. Supp. 3d at 846;

18  *BrightEdge Techs.*, 304 F. Supp. 3d at 873; *Evolutionary Intelligence*, 137 F. Supp. 3d at 1163.

19       And in its "fifth" argument, PersonalWeb argues that that the patent claims recite complicated

20  mathematical operations that cannot feasibly be performed by hand.  It then goes on to describe the

21  operations necessary to generate a hash function.  Opp. 25-26.  PersonalWeb's argument misses the

22  point.  Defendants do not allege that an individual could easily perform a hash algorithm using pen

23  and paper (although possible).  There is no need for that.  What is important for purposes of this

24  Section 101 analysis is that the content-management features of the claims—such as de-duplication

25  or controlling access—can be performed with pen and paper alone.  And even if a pen-and-paper

26  approach to hashing were considered necessary, the theoretical possibility is enough to demonstrate

27  ineligibility.  *In re Greenstein*, No. 2019-1520, 2019 WL 6713289, at *3 (Fed. Cir. Dec. 10, 2019)

28  (approving PTO Section 101 rejection on grounds that "providing for calculations to 'be performed

1   more efficiently via a computer does not materially alter the patent eligibility of the claimed subject

2   matter,'" rejecting applicant's contention that "that the Board erred in holding that these functions

3   can be performed by hand calculation, for it would take years to do so").

4        For these reasons, the Court should find that there is no "inventive concept" sufficient to

5   render the asserted claims patent-eligible under Step 2 of the *Alice* analysis.

6   **IV.   THE COURT SHOULD DENY THE REQUEST TO CONVERT DEFENDANTS'
7        RULE 12(C) MOTION TO A MOTION FOR SUMMARY JUDGMENT.**

8        Finally, given that there are no genuine disputes of material fact, the Court should deny

9   PersonalWeb's request to convert this motion to a motion for summary judgment.  *See, e.g.*, *Athena*

10  *Diagnostics*, 915 F.3d at 755 (affirming district court's decision to reject expert declaration and not

11  convert Section 101 motion to dismiss to motion for summary judgment).

12       *First*, at no point prior to its opposition did PersonalWeb suggest that the Section 101 issues

13  could turn on factual disputes.  PersonalWeb did not raise it during the joint status report, status

14  conference, or opposition to EMC/VMware's motion to amend invalidity contentions.

15  "Conversion to summary judgment is generally not appropriate where, as here, only the nonmoving

16  party has introduced evidentiary exhibits in response to a motion to dismiss or a motion

17  for judgment on the pleadings."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, No. CV

18  14-1006-RGA, 2016 WL 4373698, at *4 (D. Del. Aug. 15, 2016), *aff'd*, 874 F.3d 1329 (Fed. Cir.

19  2017).  As even the cases cited by PersonalWeb indicate, conversion is appropriate only where the

20  other party is on notice of conversion.  *See, e.g.*, *James v. Poole*, No. 06-CV-6007 MAT, 2013 WL

21  132492, at *2 (W.D.N.Y. Jan. 9, 2013).  In permitting briefing, the Court has already decided that a

22  Section 101 motion was appropriate at this stage.  There is no reason to revisit that.

23       *Second*, contrary to its argument that this motion should be "decided on the evidence

24  developed in the years of litigation that have taken place" (Opp. 9), PersonalWeb does not actually

25  cite *any* "evidence" generated or produced during this litigation in support of its position—no

26  deposition testimony, no documents, and no discovery responses.  There is no showing that

27  consideration of discovery would alter the Section 101 analysis.  The expert declaration, by an

28  individual with no apparent prior involvement, is offered only for purposes of manufacturing a

factual dispute.  As explained above, this declaration is directly contrary to multiple PTAB and Federal Circuit rulings; therefore, the purported disputes are not "genuine" and do not preclude granting judgment on the pleadings.  The other materials cited by PersonalWeb and by Defendants, such as IPR papers, are subject to judicial notice and do not require a conversion.  *See* Mot. 16 n.12; *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-05469-EDL, 2016 WL 1719545, at *1 n.1 (N.D. Cal. Mar. 9, 2016).

**Third**, PersonalWeb does not cite *any* cases that illustrate why conversion is appropriate here.  In particular, PersonalWeb cites **no cases** involving the conversion of a motion for judgment on the pleadings **under Section 101** into a motion for summary judgment.  Furthermore, PersonalWeb offers no support for its claim that "[t]actical uses of the Rule 12(c) procedure, years after the pleadings have closed, and where 'summary judgment briefing is imminent,' have alone warranted conversion of a Rule 12(c) motion into summary judgment."  Opp. 10.  On the contrary, in *Richter v. Smith*, the Court *declined* to convert to motion for summary judgment, even where the motion for judgment on the pleadings was filed more than two years after the amended complaint, because "six months remained before the scheduled jury trial."  No. C16-4098-LTS, 2018 WL 6728515, at *6 (N.D. Iowa Dec. 21, 2018).  And in *Lapella v. City of Atlantic City*, the court did not convert to a motion for summary judgment but instead permitted late amendment of the complaint.  No. CIV. 10-2454 JBS/JS, 2012 WL 2952411, at *11 (D.N.J. July 18, 2012).  And PersonalWeb's primary case, *Berkheimer*, involved a dispute about what was in the specification and did not encompass the kind of "battle of the experts" under Section 101 that PersonalWeb proposes.  881 F.3d at 1360.  The absence of authority cited for PersonalWeb's request demonstrates that such a conversion is unwarranted.[11]

## V.   CONCLUSION

Because the asserted True Name patents claim an inherently abstract idea with no inventive steps, Defendants respectfully request that the Court invalidate the asserted claims of the '310, '280, and '662 patents as patent ineligible under 35 U.S.C. § 101.

---

[11] If the Court *does* find that conversion is appropriate, it should defer deciding the motion until Defendants can depose PersonalWeb's expert, present their own evidence, and present a complete argument under the summary judgment standard.  And this should not preclude Defendants from moving for other dispositive motions, including summary judgment of non-infringement.

Dated:  January 10, 2020                              KEKER, VAN NEST & PETERS LLP

                                         By:   /s/ Robert A. Van Nest
                                               ROBERT A. VAN NEST
                                               MATTHIAS A. KAMBER
                                               REID P. MULLEN
                                               MAYA KARWANDE
                                               LEAH PRANSKY

                                               Attorneys for Defendants
                                               GOOGLE LLC and YOUTUBE, LLC

Dated:  January 10, 2020                              ARNOLD & PORTER LLP

                                         By:   /s/ Michael A. Berta
                                               MICHAEL A. BERTA
                                               NICHOLAS H. LEE

                                               Attorneys for Defendants
                                               GOOGLE LLC and YOUTUBE, LLC

Dated:  January 10, 2020                              COOLEY LLP

                                         By:   /s/ Heidi L. Keefe
                                               MICHAEL G. RHODES
                                               HEIDI L. KEEFE
                                               MARK R. WEINSTEIN
                                               REUBEN H. CHEN
                                               LAM K. NGUYEN
                                               DENA CHEN

                                               Attorneys for Defendant
                                               FACEBOOK, INC.

Dated:  January 10, 2020                              WILMER CUTLER PICKERING
                                                      HALE AND DORR LLP

                                         By:   /s/ Robert Galvin
                                               ROBERT GALVIN
                                               WILLIAM F. LEE (pro hac vice)
                                               CYNTHIA D. VREELAND (pro hac vice)
                                               PETER DICHIARA (pro hac vice)

                                               Attorneys for Defendants and
                                               Counterclaim-Plaintiffs
                                               EMC CORPORATION
                                               AND VMWARE, INC.

1

## ATTORNEY ATTESTATION

2

3 I, Robert Van Nest, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5- 1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

4

5 By: ___*/s/Robert Van Nest*___
Robert Van Nest

6

## CERTIFICATE OF SERVICE

7

8 I hereby certify that on January 10, 2020, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

9 By: ___*/s/ Robert Van Nest*___
Robert Van Nest

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28